## Walker et al., Appellants, *v.* Scranton School District et al.

Argued January 2, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*Harold A. Scragg*, with him *Joseph Marzzacco*, for appellants.

*Stanley F. Coar*, with him *David J. Reedy*, for appellees.

Opinion by Mr. Justice Drew, March 25, 1940:

Plaintiffs, each the holder of a "Tenure Contract" under the provisions of the Act of April 6, 1937, P. L. 213, were suspended from further teaching duties February 1, 1938, due to a substantial decrease of pupil population within the School District of the City of Scranton. Writs of alternative mandamus to compel their reinstatement were issued by the court below and hearings held; judgments were entered in favor of defendants, the School District and its Directors, and these appeals followed.

Plaintiffs were appointed as professional employees of the School District under what may be referred to as the "Scranton plan of appointment". This plan was devised by the Board of School Directors in an effort to ascertain those best qualified to teach the courses offered in the curriculums of the Scranton schools. In operation, it is not complicated. The teaching assignments are divided into primary grades, intermediate grades, subjects taught in the high schools, and special departments, such as kindergarten, physical education, art and music. After the applicants for appointment present their certificates from the Department of Public Instruction licensing them to teach as set forth therein, they are examined by the School Board to determine their qualifications to teach those courses in which they specialized in normal school or college. They are rated on this examination and their names placed on a list as eligible for appointment to that teaching assignment for which they were examined. Thereafter, whenever a teacher is required for a certain assignment, the appointment is made from the list containing the names of those eligible for such an appointment. The appointment, as recorded in the minutes of the meeting of the School Board, reads that the successful applicant is appointed to a specific teaching assignment.

Plaintiffs, with the exception of Walsh and Spohrer, hold normal school certificates stating that they special-

ized in the intermediate curriculum, which corresponds to the curriculum of the intermediate grades, and are licensed to teach the curriculum of the elementary schools, which are divided into primary and intermediate grades. Walsh and Spohrer hold college certificates authorizing them to teach the curriculum of the elementary schools and, in addition, licensing them to teach certain high school subjects. All plaintiffs qualified under the "Scranton plan of appointment" to teach in the intermediate grades of the School District and taught in that teaching assignment. None of them qualified under the plan to teach in any other assignment, either in the elementary schools or in the high schools of the District.

Admittedly there are other professional employees still in the employ of the defendant School District whose dates of appointment were subsequent to the dates of appointment of plaintiffs, and who are filling assignments to the primary grades which plaintiffs are licensed to fill. There are also professional employees in the high schools of the District whose dates of appointment are subsequent to those of plaintiffs Walsh and Spohrer, and who are filling assignments which the latter are licensed to fill. As a result of the continued employment of these other professional employees after plaintiffs' suspensions, plaintiffs contend that they were suspended in violation of section 2 (b)[1] of the Act of 1937, supra, in that the Board of School Directors suspended the necessary number of professional employees in each teaching assignment where a decrease in pupil population occurred in the inverse order of their appointment to such assignment, without regard to the suspended employees'

---

[1] The Act of April 6, 1937, P. L. 213, section 2, provides:

"(b) Whenever it shall become necessary to decrease the number of professional employes by reason of substantial decrease of pupil population within the school district, the board of school directors . . . may suspend the necessary number of professional employes, but only in the inverse order of the appointment of such employes. . . ."

seniority to employees in other assignments, even though the suspended senior employees were licensed by the Commonwealth to teach in the other assignments. Plaintiffs assert that the preference granted by section 2 (b) is a general right as to any position within the School District for which they are licensed to teach and that the action of the School Board in limiting that right to specific teaching assignments has changed the order of suspension as set forth in the Act.

In answering the question here raised, it will be necessary to determine the meaning of the term "appointment" as used in section 2 (b) of the Act of 1937 and to decide whether certain sections of the School Code of 1911,[2] as amended, limit its possible scope.[3] In so doing, we must keep in mind the underlying purpose of the Tenure Act, as expressed in *Walker's Appeal*, 332 Pa. 488, 491: "The fundamental public policy, expressed in the Constitution and underlying school laws, is to obtain a better education for the children of the Commonwealth." See also, *Com. ex rel. v. Sunbury School District*, 335 Pa. 6, 11.

Each school board is empowered to administer the public school system within its school district.[4] To enable it to do so efficiently and in the best interests of the children, it may adopt and enforce reasonable rules and

---

[2] School Code of May 18, 1911, P. L. 309.

[3] The terms of a "Tenure Contract" under the Act of 1937 provide:

"This contract is subject to the provisions of the act, approved the eighteenth day of May, one thousand nine hundred and eleven (Pamphlet Laws, three hundred nine), . . ., and the amendments thereto."

[4] The School Code, section 402, provides:

"In order . . . to enable it to carry out any provision of this act, the board of school directors in each school district in this Commonwealth . . . shall have, and be vested with, all necessary power and authority to comply with and carry out any or all of the provisions of this act."

regulations.[5] In pursuance of these powers the School Board of the City of Scranton adopted the "Scranton plan of appointment" of professional employees and classified the teaching assignments. Plaintiffs concede that the School Board acted within its powers in so doing. This being so, it necessarily follows that "appointment", as used in section 2 (b) of the Act of 1937, refers to every appointment that a school board is empowered to make, and the exact scope of the term in a given case will depend on the facts of that case. In the instant case, for example, plaintiffs were appointed to the intermediate grades, which limitation definitely appears in the minutes of the Board, and, therefore, the School Board properly confined the inquiry as to seniority rights to that teaching assignment. Plaintiffs have failed to realize that by the very provisions of the School Code, as amended, the suspension of a professional employee is controlled by the terms of his appointment and cannot be considered separately therefrom.

Moreover, it cannot reasonably be argued that the Legislature intended by section 2 (b) to impair the beneficial results of a sound and sensible plan of school management.[6] The aim and object of our school system

---

[5] The School Code, section 404, as amended by the Act of May 29, 1931, P. L. 243, section 9, provides:

"The board of school directors in every school district of this Commonwealth may adopt and enforce such reasonable rules and regulations as it may deem necessary and proper, regarding the management of its school affairs. . . ."

See, *Jones v. Kulpmont Boro. School District,* 333 Pa. 581.

[6] The Statutory Construction Act of May 28, 1937, P. L. 1019, section 52, provides:

"In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others:

(1) That the Legislature does not intend a result that is . . . unreasonable.

(5) That the Legislature intends to favor the public interest as against any private interest."

is to provide the best education for the children of the Commonwealth. It cannot be doubted that it was the intention of the Legislature to subordinate all other considerations.

It must be noted that plaintiffs were working under their original appointments when suspended; if any one of them had been transferred to another teaching assignment subsequent to her appointment, as she could have been under her contract *(Ganaposki's Appeal,* 332 Pa. 550), a further problem, which we need not meet here, would have been created. The problems of the Tenure Act are multifarious and we can only meet them as they arise in cases before us. Each case must be disposed of on its own particular facts.

Judgments affirmed.