# Jones v. Mt. Carmel Township School District

*Charles C. Clark*, for plaintiff.
*Carleton M. Strouss*, for defendants.

CUMMINGS, J., January 4, 1943.—This is a proceeding for a writ of alternative mandamus, at the instance of Bernadette Jones, plaintiff, against the board of school directors of the school district of the Township of Mount Carmel, Northumberland County, Pa. On petition presented February 17, 1941, a writ of mandamus in the alternative form against the said school directors was awarded, returnable on March 10, 1941. . . .

## Discussion

The questions raised by the petition and answer are:

First. Was seniority considered in the suspension of plaintiff?

Second. The Beaverdale and Merriam Schools in Mount Carmel Township having been closed February 1, 1941, by order of this court (dated January 17, 1941, no. 729, in equity), could the school directors suspend the teachers who were employed in these schools, in disregard of seniority rights?

Third. Where a teacher's original entrance into the service of the defendant school district antedates the Tenure Act, but her service was interrupted by dis-

missal or failure to teach in the district for several school years, and a new appointment of her is made before the Tenure Act, is the basis of such teacher's seniority rights limited to the period since the date of the last appointment under which she was serving when the Tenure Act became effective?

On August 23, 1928, plaintiff, Bernadette Jones, was employed as a professional employe by the school directors of the school district of Mount Carmel Township, to teach in the elementary grades, and continued in such employment from year to year, continuously, until her suspension, effective February 1, 1941. We have found as a fact that, subsequent to her appointment or employment by said school district, 30 professional employes of the same status as plaintiff were appointed, 29 of whom are still under contract with the district.

It is admitted in the answer of defendant, and testified to by Patrick J. Burke, superintendent of schools of the Township of Mount Carmel, that no substantial difference in rating is found between the rating of Bernadette Jones and the professional employes appointed subsequent to the appointment of plaintiff on August 23, 1928.

We have also found as a fact that seniority was given no consideration by the defendant school board "in accordance with the principles and standards of weighting" incorporated in the rating cards, in the attempted suspension of plaintiff.

In argument of the case and in the briefs filed, counsel for plaintiff and defendant were in disagreement as to the meaning of the word "seniority" as used in section 1205 (b) 3 of the Act of June 20, 1939, P. L. 482. We hold the legislature intended the word "seniority", as used in the act, to mean "superiority in standing to another of equal station, by reason of earlier entrance into continuous service."

In support of this decision, we cite Roberts et al. v. School District of Luzerne Township, 3 Fayette 188, where Judge Carr, in his discussion said, at p. 195:

"The Act of April 6, 1937, P. L. 213, commonly known as the Teachers' Tenure Act, amending the School Code by defining 'professional employees' and regulating their employment, dismissal, and suspension, contained the provision that, 'Whenever it shall become necessary to decrease the number of professional employes by reason of substantial decrease of pupil population within the school district, the board of school directors (or board of public education) may suspend the necessary number of professional employes, but only in the inverse order of the appointment of such employes.' This regulation was amended by the Act of June 20, 1939, P. L. 482, effective immediately upon its enactment, which eliminated the words 'but only in the inverse order of the appointment of such employes,' and substituted the following: 'Provided, That in cases in which suspensions are to be made during the school term immediately following the effective date of this act, professional employes shall be retained on the basis of seniority rights.' . . . While it is true that the terms 'order of appointment' and 'seniority' may, under some circumstances, be used synonymously, we think it significant that, in amending the Tenure Act, the legislature has discarded the term 'order of appointment.' Its vagueness is apparent from its identification by counsel with the date of election rather than with the contract date. Under a variety of circumstances it may lack clarity (Walker v. School District of City of Scranton, 338 Pa. 104, 12 Atl. (2d) 46, whereas the word 'seniority' has a common and approved usage, precisely defined by Webster as 'the status accorded by length of service.' This is its ordinary meaning throughout the country, and any other interpretation of its use by the legislature would seem to be a perversion: Brand v. Pennsylvania Rail-

road Co., 22 Fed. Supp. 569, 571, (D. C., Pa.) ; Grand International Brotherhood of Locomotive Engineers v. Mills, 31 P. (2d) 971, 979, 43 Ariz. 603; Restatement, Contracts, Sec. 235. The legislative change of words is a clear intimation that they are to have a different construction: In re State Highway Route No. 72, 265 Pa. 369; Rich v. Keyser, 54 Pa. 86.

"There was, of course, an underlying principle and purpose in according teachers professional status. Since teaching is a vocation founded upon prolonged and specialized training, in which aptitude is increased by experience, it was believed that an adequate and competent teaching staff, free from political and arbitrary interference, would more efficiently perform their duty of instruction and afford the children of the commonwealth a better education: Walker's Appeal, 322 Pa. 448. If these considerations are valid, then the procedures used in the selection of personnel for layoff must have a vital bearing upon morale and efficiency. Any reading of the statute that would subject teachers of tried and proved capacity to the depressing influence of a sense of disappointment and of disparaging discrimination in favor of their juniors would, we think, tend to destroy values it was meant to conserve. Accordingly, we decide that seniority means superiority in standing to another of equal station, by reason of earlier entrance into continuous service; . . . and that all else is mere matter of form. Among equals in station, until a substantial difference in ratings becomes officially established by the county superintendent of schools, preference in continuance of employment must be accorded to those who have served longest."

Second, counsel for defendant contended that by reason of the closing of the Beaverdale and Merriam Schools in Mount Carmel Township, Feruary 1, 1941, by order of this court, dated January 17, 1941, no. 729 in equity, the school directors were at liberty to suspend

the teachers who were employed in these particular buildings at the time of the suspensions, regardless of the Tenure Act.

The contract of plaintiff, Bernadette Jones, employed her as a teacher in the Mount Carmel schools. Evidently, at the time of her suspension she was teaching in the Beaverdale School. The evidence is silent as to the length of time she had been teaching in the Beaverdale School.

The resolution of the board of directors of January 31, 1941, suspending Bernadette Jones and others, sets forth as the only reason for such suspensions the decree of the court in the equity proceeding, supra, closing the Beaverdale and Merriam Schools in said district, as follows:

"Whereas, suspensions due to court order are not included in the reasons for suspensions as enumerated in the Tenure Act, . . . it is within the discretion of the board of school directors to suspend teachers in an order otherwise than specified in the Tenure Act . . ."

The effect of the decree of the court closing the Beaverdale and Merriam Schools, we held in opinion filed dismissing the demurrer filed to the bill, did not relieve the school board of the Township of Mount Carmel from complying with the Teachers' Tenure Act in the suspension of plaintiff and others. We said:

"The disposition of the equity case in no way interfered with or prevented the board from complying with the Teachers' Tenure Act in the necessary dismissal of professional employees. The necessity for decreasing the teaching staff was the result of the consolidation of schools — whether such consolidation is the result of the action of the board or decree of court, it comes within the third cause for suspension enumerated in the act.

"The disposition of the equity case relied upon by the defendants in their motion to quash, including the findings of fact and decree, was made pursuant to the

agreement of counsel for the plaintiff and defendant school board and, although it does not appear as a matter of record in the case, with the understanding that the necessary reduction in the teaching staff would be made in accordance with the existing law regulating same."

The Act of June 20, 1939, P. L. 482, sec. 1205(b), provides:

"Any board of school directors (or board of public education) may suspend the necessary number of professional employes, for the causes hereinafter enumerated: . . .

"(3) Consolidation of schools, whether within a single district, through a merger of districts, or as a result of joint board agreements, when such consolidation makes it unnecessary to retain the full staff of professional employes.

"Whenever a board of school directors (or board of public education) decreases the size of the staff of professional employes under the provisions of this act, the suspensions to be made shall be determined by the county superintendent of schools or the district superintendent, as the case may be, on the basis of efficiency rank determined by ratings made in accordance with standards and regulations, determined by rating cards prepared by the Department of Public Instruction. It shall hereafter be the duty of boards of school directors to cause to be established a permanent record system, containing ratings for each teacher employed within the district, and copies of all ratings for the year shall be transmitted to the teacher upon his or her request, or, if any rating during the year is unsatisfactory, a copy of same shall be transmitted to the teacher concerned. No teacher shall be dismissed under this act unless such rating records have been kept on file by the board of school directors.

"In cases in which suspensions are to be made, professional employes shall be retained on the basis of

seniority rights where no differences in rating are found. Seniority rights shall also prevail where there is no substantial difference in rating."

We hold that even though the Beaverdale and Merriam Schools were closed (plaintiff being employed in the former at the time of suspension) the board of school directors acted in total disregard of section 1205 of the Act of 1939, supra, in failing to take seniority into consideration in their suspension of teachers.

The third question needs little discussion, as it is incorporated in the discussion of the first question, we having there held that seniority rights as used in the act mean "superiority in standing to another of equal station, by reason of earlier entrance into continuous service"; all else is a mere matter of form. Among equals in station, until a substantial difference in ratings becomes officially established by the county superintendent of schools, preference in continuance of employment must be accorded to those who have served longest.

We, therefore, hold that under the facts in this case plaintiff is entitled to preference in continuance of employment over those subsequently employed.

*Decree*

And now, to wit, January 4, 1943, upon consideration of the foregoing case, it is ordered, adjudged, and decreed that a writ of peremptory mandamus issue, directed to defendants, the board of school directors of the School District of the Township of Mount Carmel, Northumberland County, Pa., commanding them to restore plaintiff, Bernadette Jones, to her position as a professional employe of said School District of Mount Carmel Township, and to assign her to the proper duties incident to that position.

It is further ordered, adjudged, and decreed that the said board of school directors of the School District of Mount Carmel Township, Northumberland County,

Pa., pay to the said Bernadette Jones the damages sustained by her, as found by the court, up to November 1, 1942, to wit, the sum of $1,068.97; defendants to pay the costs.