## Kaplan *v.* Philadelphia School District, Appellant.

Argued October 7, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*C. Brewster Rhoads*, with him *Sidney L. Wickenhaver* and *Edward B. Soken*, for appellant.

*Henry W. Sawyer, III*, with him *Drinker, Biddle & Reath*, for appellee.

OPINION BY WOODSIDE, J., March 28, 1955:

The question presented to us in this case is whether a school district must pay one of its teachers, who had attained a status of permanent tenure, his salary for the time between the date he was suspended by the superintendent for failure to answer questions concerning his loyalty, and the date he was dismissed by the board for such conduct.

The lower court entered judgment for the plaintiff on the record in an action in assumpsit brought by the teacher against the School District of Philadelphia.

The court was in error.

The plaintiff entered into a contract on July 13, 1948 with the School District of Philadelphia in accord-

ance with the terms of the Public School Code. Having attained a status of permanent tenure he continued to teach until November 20, 1953 when the Philadelphia Superintendent of Schools suspended him from duties as an employe of the school district as of the close of school on that date.

Promptly after his suspension, charges were filed against him setting forth, among other things, that when asked by his superintendent if he was an organizer of the Communist Party in Eastern Pennsylvania and Delaware in 1950 he refused to answer or to discuss the matter, and thereafter persisted in this refusal.[1] These charges were sustained by the board of school directors after formal hearing, and the plaintiff

---

[1] The charges were set forth as follows: "On October 21, 1952, Dr. Louis P. Hoyer, Superintendent of Schools, informed you, during a personal interview, that he wished to ask you some questions concerning your loyalty, which in turn had an important bearing on your professional fitness. You stated you wished to hear the questions. He then asked if you were an organizer of Section 12 of the Communist Party of Eastern Pennsylvania and Delaware in 1950. Instead of answering the question you repeated several times 'I can't discuss that with you.' You persisted in refusing to answer the questions although the seriousness of it was urged upon you at the interview. Dr. Hoyer gave you the opportunity of consulting counsel.

"On November 19, 1952, at the second interview you stated your counsel had advised you not to answer any questions and that the Pechan loyalty oath had established your loyalty.

"It is the duty of the Superintendent of Schools to separate from the teaching staff professionally unfit employes. In carrying out this duty Dr. Hoyer, Superintendent of Schools, tried to ask you important questions having a direct bearing on your professional fitness. You impeded the Superintendent of Schools by refusing to answer these questions. You showed a lack of professional fitness and understanding of your responsibility to your profession and to the school system. Your persistent refusal to answer the questions constitutes a wilful violation of the school laws of this Commonwealth.

was dismissed by the action of the board on January 7, 1954. He appealed his dismissal, and final disposition of that appeal has not been made. That appeal, and thus the merits of the board's action in dismissing him, are not before us.

The plaintiff is one of approximately thirty teachers in Philadelphia against whom somewhat similar charges were made and sustained by the Philadelphia School Board.

The plaintiff seeks to recover his salary between November 20, 1953, the date he was suspended by the superintendent, and January 7, 1954, the date when he was dismissed by the board. It is his contention that the school district had no authority to deprive him of his salary prior to the action of the board on January 7 regardless of whether or not his dismissal by the board was legal.

The lower court, in an opinion by Judge FLOOD, agreed with him and entered judgment in the sum of $914.74.

The only specific provision in the School Code relating to suspension of teachers is section 1124 of the Act of March 10, 1949, P. L. 30, 24 PS §11-1124. This section provides for the suspension only when there is a substantial decrease in pupil enrollment, curtailment or alteration of the educational program or consolidation of schools which makes it unnecessary to retain all of the professional employes. The suspension provided for in this section is in the nature of a furlough

---

"By your refusal to answer the questions of a properly constituted Congressional investigating committee you showed a lack of professional fitness by disregarding your civic responsibility as well as your duty as a public school teacher whose place in the community should be that of leadership in inculcating the highest ideals of democracy in our public school children by personal example, . . ."

leading to subsequent reinstatement, and has no bearing on this case.

Although there is nothing specific in the Code relating to suspension such right is inherent in the school district.

The duty to "provide for the maintenance and support of a thorough and efficient system of public schools" for the education of the children of this Commonwealth is imposed upon the legislature by the Constitution of this Commonwealth. See Article X, Section 1.

The term "education" includes cultivation of morality as well as attainment of knowledge and intellectual culture. *Dethoff v. School District of City of Reading*, 17 Berks 213 (1925).

The schools are for the students. It is their welfare that the Constitution aims to promote by the "thorough and efficient system of public schools." It was to promote their welfare that the General Assembly passed the teachers' tenure law, and it must be interpreted in this light by us.

"The aim and object of our school system," said Justice DREW in *Walker v. Scranton School District*, 338 Pa. 104, 109, 110, 12 A. 2d 46 (1940), "is to provide the best education for the children of the Commonwealth. It cannot be doubted that it was the intention of the Legislature to subordinate all other considerations."

The children must be protected from the influence of an immoral or unfit teacher, and the inherent right to remove such teacher from the classroom forthwith, pending dismissal by the board, has not been denied by the teachers' tenure law.

It is admitted by the appellees that the right to suspend a teacher from the performance of any duties is inherent even though no specific provisions authorizing

such suspension can be found in the Public School Code.

The appellee in his brief approves of the lower court's reasoning on this point which is set forth in the following language.

"It would seem to be obvious that a teacher may be suspended from the performance of any duties under certain circumstances pending a hearing on charges of dismissal, as was held in Intille v. Hoyer, supra.[2] Certainly if by reason of some immoral action or some definite indication of mental illness, it would be unsafe or improper to have the teacher conduct classes or dangerous to his pupils that he should do so, the superintendent would be remiss if he did not remove him from the classes. But until the teacher has had the hearing provided for in the code, and there is a proper determination to dismiss him, his pay cannot be cut off."

Thus the lower court has correctly stated as the law what it cannot find in the Public School Code, to wit: that the superintendent of schools has a duty to prohibit teachers from teaching if by reason of some moral action it would be "improper to have the teacher conduct classes," but the court holds that the school district must pay him for not rendering services *because* it cannot find in the Public School Code a right to suspend the teacher.

The lower court recognizes that where a teacher becomes physically incapable of performing his duties there is a failure of consideration, and he cannot recover his pay after he ceases to perform even though he is not dismissed until later. This is substantiated by the decisions of this court in *Hetkowski v. Dixon City School District,* 141 Pa. Superior Ct. 526, 15 A.

---

[2] Cited in that opinion "supra" as "C.C.P. No. 5 December Term, 1953, No. 7738 decided April 6, 1954."

2d 470 (1940), and *Com. ex rel. Wesenberg v. Bethlehem School District,* 148 Pa. Superior Ct. 250, 24 A. 2d 673 (1942).

When a teacher breaks his leg he becomes physically unfit to perform his duties, and when he breaks the moral laws he becomes morally unfit to perform his duties. To deny compensation to the teacher who suffers a physical or mental handicap which makes him unfit to teach, and allow compensation to the teacher who deliberately breaks the moral law which makes him unfit to teach, would result in an absurd and unreasonable interpretation of the act. The legislature does not intend such an interpretation of its acts. See Statutory Construction Act of May 28, 1937, P. L. 1019, Sec. 52 (1), 46 PS §552.

In *Hetkowski v. Dixon City School District,* supra, page 532, Judge HIRT speaking for this court said: "A contract for personal services presupposes the continuing ability of the employee to make substantial performance. Plaintiff's inability to perform her contract was the result of her voluntary act, in this sense wilful, committed by her with knowledge of the probable consequence.[3] The contract was made not only on the implied representation that plaintiff then had the ability to perform, but also upon a similar covenant that she would not render herself incapable of performance by her voluntary act during the term of her employment. It was plaintiff's immoral act which caused her pecuniary loss; this resulted in a failure of consideration which relieved the school district from the obligation to pay salary after December 6, 1937,

---

[3] She became pregnant while single, and the school board, finding that her condition was such that, due to mental strain and physical condition, she was incompetent to perform her duties, discharged her.

during the remaining period of disability. The inability of plaintiff to perform an entire contract released the defendant from liability. (citing) Performance of a contractual duty to render services may be waived (citing) but the resolution of December 6, 1937 conclusively negatives any inference of waiver by the defendant in this case."

Although our attention has been called to no Pennsylvania case in point, the case of *Gentner v. The Board of Education of Los Angeles,* 219 Cal. 135, 25 P. 2d 824 (1933) is quite similar. That case involved the refusal of the Board of Education to accept any services from a teacher who had permanent tenure, pending the disposition of charges against the teacher. The charges were based on incompetence and evident unfitness to teach, and the teacher was dismissed after hearing before the board. As in the present case, the teacher contended that he was entitled to be paid his salary between the date of suspension and the date of the board's order of dismissal, because he was ready and willing to teach and would have taught, but for the action of the school authorities in refusing to permit him to do so.

The California School Code provided expressly for a hearing on notice prior to the dismissal of a professional employe, the teacher retaining his tenure and the rights incident thereto until such dismissal. Like the Pennsylvania Public School Code, there was no express provision for suspension of teachers pending determination of charges. The Supreme Court of California, in denying compensation prior to the board's action of dismissal said, at page 825: "The welfare of the children is the paramount consideration. It follows from the fact that the authorities are not required to give active employment to a teacher pending his removal hearing, that, when his removal is subsequently

ordered, he is not entitled to receive salary for the period during which he has not taught. The law does not contemplate that public funds shall be expended where no services are performed, and where not only is there no duty to accept services tendered, but the welfare of the children may require that they be dispensed with until a hearing can be held. The interests of the teacher receive a full measure of protection in the right to a hearing as provided by law, and the right to receive a salary for the entire period of unemployment in the event it should be determined that cause for removal did not exist."

It is contended by the appellee that he was not a harmful personal influence upon his students because there were no charges of improper teaching or classroom conduct ever made against him.

The influence of a teacher upon his pupils is not limited to what he says and does in the schoolroom. As a minister's conduct outside of the church is a matter of concern to his parishioners so is the conduct of a teacher outside of the schoolroom a matter of concern to the school authorities. Children frequently attempt to emulate their teachers and their every known act frequently becomes a matter of importance to the student. Although a teacher's conduct outside of the classroom is probably less important in urban districts than in rural districts and in high school than in elementary school, nevertheless the teacher's right to teach cannot depend solely upon his conduct in the schoolroom.

We, of course, do not suggest that a teacher's every act may be scrutinized by a school board to find some slight indiscretion to be used as an excuse to discharge him, but we do say that the board is not limited to consideration of his conduct in the classroom when passing upon his fitness to teach.

We refer to these matters only because appellee has argued in his brief that there was no charge of improper teaching or classroom conduct as a fact relevant to this case. We are not, however, here dealing with the question of whether the teacher's conduct warrants his dismissal and do not wish to prejudge the ultimate conclusion of the law concerning it.

For the purpose of this case we must assume that his conduct made him unfit to teach. The conduct for which he was suspended was presented to the school board which held a hearing, presumably in accordance with the provisions of the code. After the hearing, the school board concluded that the charges made against the plaintiff were well founded and that he was unfit to teach, and accordingly dismissed him. We have been advised that since argument in this case the State Superintendent of Public Instruction has affirmed the dismissal, and that appeal has been taken to the Common Pleas Court of Philadelphia, where the case is now pending.

If ultimately it is determined that the plaintiff's conduct did not make him unfit to teach, he will be entitled to recover the loss he suffered by the improper action of the board. If he is innocent of misconduct for which he could be dismissed he recovers all his loss; if he is guilty he recovers none. He should not be entitled to recover part, if he is guilty. He did not earn it. He did not earn it *because his conduct made him unfit to earn it.*

Furthermore, if he were to procure part of his salary, what part of it he would recover would depend upon how long he was able to postpone through continuance and delay the action of the board in dismissing him. The amount of his recovery would thus depend upon the duration of suspension and not upon the validity of the charges.

Judgment reversed.