## Johnson v. United School District Joint School Board, Appellant.

Argued April 16, 1963. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*G. S. Parnell, Sr.,* with him *G. S. Parnell, Jr.,* and *Parnell & Parnell,* for appellant.

*Robert C. Earley,* for appellee.

OPINION BY WOODSIDE, J., June 13, 1963:

This is an appeal by a school district from a judgment entered on the pleadings in favor of a school teacher for salary during a period when she was not teaching because she had been notified that she had been dismissed.

The facts must be gathered exclusively from the complaint and answer, which constitute the record upon which the judgment was entered. The plaintiff admits for the purposes of her motion for judgment on the pleadings the truth of all the defendant's allegations and the untruth of any of her allegations which have been denied by the defendant. 1 Standard Pennsylvania Practice, p. 252, §1034(b)-1, Goodrich-Amram; *Cary v. Lower Merion School District*, 362 Pa. 310, 312, 66 A. 2d 762 (1949).

The facts thus determined are as follows: The plaintiff, Martha Perry Johnson, was employed by the United School District Joint School Board in Indiana County at $4000 a year under a "Temporary Contract for Professional Employe". The plaintiff was told when interviewed, again at a teacher's meeting the day before the student's school term opened, and on at least one subsequent date that she was to attend "Open House." The reference is to the evening when the parents may come to the school attended by their children, talk with the teachers and examine the work of the students. It is an important part of the school program. Prior to the holding of open house, the plaintiff advised her administrative superior that she would not attend. She was told by the defendant that "she was required to attend". Without giving any reason, she again said that she would not attend. She did not attend open house, going instead with her husband to Pittsburgh as a chaperon for children of a school in which her husband taught.

By letter dated December 21, 1961, she was notified that as of that date she was dismissed as a temporary professional employe of the district. The reason for dismissal was given as "insubordination and lack of cooperation". The following day the plaintiff by letter requested a hearing. As it was mailed during the Christmas vacation, the letter was not received by the defendant until January. A hearing was then set for February 7, 1962, when the plaintiff and her attorney appeared before the board but refused to participate in the hearing. A subsequent request by the plaintiff for another hearing was granted and, after several postponements, a hearing was held on May 14, 1962, when the board of the school district ratified the dismissal action of December 21, 1961.

Following her dismissal on December 21, 1961, the plaintiff did not hold herself out as ready and willing to continue in the employ of the defendant, did not present herself at the United Joint High School to undertake her duties, and has made no request to return to work at any time since December 21, 1961.[1]

The court below concluded that the teacher was "indiscreet" in refusing to attend open house, but that her refusal was not sufficient cause to bring about her dismissal. We think this was error.

. Public schools are operated for the students and not for the officers and employes. All of the many *dedicated* teachers of this Commonwealth live by this tenet. It has been recognized in many cases as a basic principle of law.

"The fundamental public policy, expressed in the Constitution and underlying school laws, is to obtain a better education for the children of the Commonwealth." *Walker's Appeal*, 332 Pa. 488, 491, 2 A. 2d

---

[1] This is taken from paragraph 6 of the defendant's answer which must be accepted as true, unless her request for a hearing constituted "a request to return to work".

770 (1938), *Commonwealth ex rel. v. Sunbury School District,* 335 Pa. 6, 11, 6 A. 2d 279 (1939). It was the intention of the legislature to subordinate all other considerations to this policy. *Walker v. Scranton School District,* 338 Pa. 104, 110, 12 A. 2d 46 (1940). The teacher tenure provisions must be considered in the light of this fundamental public policy. *Swick v. Tarentum Borough School District,* 141 Pa. Superior Ct. 246, 251, 14 A. 2d 898 (1940).

The open house is a significant part of the school program. Many busy parents give high priority to attending school that evening, often setting aside pressing social, business and community engagements. They meet their children's teachers, discuss their children's special problems and develop a spirit of cooperation and understanding with the teachers, all for the purpose of advancing the education of their children. Good teachers, sometimes accepting the annoyance of a few unreasonable parents, appreciate the opportunity which the open house gives them to explain the school program to the parents and to learn more about their pupils. The refusal, without cause, of a new teacher to participate in this program sets a bad example for the students, is an annoyance to the faithful teachers who always participate, is embarrassing to the school officials who are called upon to explain her absence, and disappointing, if not outright disgusting, to the parents and relatives who have made personal sacrifices to be there. Any school teacher who lacks an understanding of her responsibility to be present on this occasion and who arrogantly refuses to obey the direction of her employer to be there and instead follows her own personal whims and pleasures can properly be held by the board employing her to be unfit to continue in the employment of that board. The plaintiff here has demonstrated a lack of "respect for the glorious traditions of the teaching profession." See *Kaplan v. Philadelphia School District,* 388 Pa. 213, 223, 130 A. 2d 672 (1957).

It is established that a school teacher may be dismissed because of insubordination and lack of frankness in refusing to answer questions of his administrative superior bearing upon his loyalty. *Board of Public Education, Philadelphia v. Soler,* 406 Pa. 168, 176 A. 2d 653 (1961).

As stated by Mr. Justice MUSMANNO in his inimitable language, "How can a school system be operated with any degree of efficiency, order and success if school teachers do not show respect toward the Superintendent of the school, the man who has the responsibility of maintaining order? How can children be expected to show respect toward their teachers if they learn that the teachers themselves are disrespectful to *their* superiors? . . . No large organization can survive without orderly procedure and gradation of responsibility. Discipline is required not only in the military. It is indispensable in every establishment in civilization if anarchy and catastrophe are to be avoided . . . . What would happen to all organized society if government employees could close their eyes to directives which control the intermeshing of the vast complicated gears of governmental machinery?" *Board of Public Education, Philadelphia v. August,* 406 Pa. 229, 250, 251, 177 A. 2d 809 (1962). The plaintiff here not only closed her eyes to a directive, but arrogantly persisted in her announced intention not to comply with the directive. This conduct was an act of negligence and would also be classified as persistent and wilful violation of the school laws. *Ganaposki's Case,* 332 Pa. 550, 555, 2 A. 2d 742 (1938) ; *Ambridge Borough School District v. Snyder,* 346 Pa. 103, 108, 29 A. 2d 34 (1942) ; *Commonwealth ex rel. Wesenberg v. Bethlehem School District,* 148 Pa. Superior Ct. 250, 256, 24 A. 2d 673 (1942). The teachers tenure provisions do not create a term longer than good behavior. *Teachers' Tenure Act Cases,* 329 Pa. 213, 230, 197 A. 344 (1938).

We are satisfied that the persistence of the plaintiff in her announced refusal, without cause, to accept her assignment to open house justified the board in discharging her.

In his argument before us, counsel for the appellee rested his case primarily on the alleged failure of the board to proceed properly in dismissing the plaintiff.

The Public School Code of 1949, P. L. 30, 24 P.S. §1-101 et seq., even with all the effort that was put into its drafting, was carelessly and inarticulately drawn in its definitions and use of the terms "professional employe" and "temporary professional employe." Article XI of the Code, 24 P.S. §11-1101 et seq., although seeming to *detail* the plan of teachers tenure, is an example of statutory inconsistencies and omissions which inevitably result in confusion. "Professional employe" seems by definition and occasional use to include a "temporary professional employe," while generally the two terms are used to indicate separate and distinct categories.[2]

The act sets forth in §1121 (24 P.S. §11-1121) the exact language of the contract of employment "with each professional employe who has satisfactorily completed two (2) years of service in any school district of this Commonwealth." If "professional employe" as used in the first sentence of that section is to include a "temporary professional employe," then a contract of employment with a temporary professional employe must also be in writing, but in undesignated language, presumably different from that set forth in the Code for teachers who have acquired the tenure following two years of satisfactory service.

In the case before us, the board used the form of contract provided for professional employes who have gained tenure by two years of satisfactory service, but

---

[2] Example: "A temporary professional employe . . . shall thereafter be a 'professional employe'." §1108(b).

added the word "temporary" before professional employe where it appeared in the contract.[3]

The salary of a teacher is not treated as an emolument of office, but is governed by contract. *Coble v. Metal Twp. School District,* 178 Pa. Superior Ct. 301, 307, 116 A. 2d 113 (1955). However, the contract which school teachers have is a qualified contract. Teachers' Tenure Act Cases, supra, 329 Pa. 213, 228, 197 A. 344 (1938). "Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order." *Home Building & Loan Assn. v. Blaisdell,* 290 U.S. 398, 435 (1934); *Teachers' Tenure Act Cases,* supra, 329 Pa. 213, 226, 197 A. 344 (1938).

The plaintiff argues that even if there were proper cause for the board to dismiss her, a dismissal could be made effective only by an unsatisfactory rating.

Section 1108 of the Code, 24 P.S. §11-1108, provides that: "No temporary professional employe shall be dismissed unless rated unsatisfactory, and notification, in writing, of such unsatisfactory rating shall have been furnished the employe within ten (10) days following the date of such rating. The rating of a temporary professional employe shall be done as provided in section one thousand one hundred twenty-three of this act." Section 1123, 24 P.S. §11-1123, provides that in rating consideration shall be given to "personality, preparation, technique, and pupil reaction . . ."

Section 1122, 24 P.S. §11-1122, provides: "The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be immorality, incompetency, intemperance,

---

[3] Inquiry has led us to believe that there is no uniform practice throughout the state in contracting with teachers who have not served two years in the Commonwealth.

cruelty, persistent negligence, mental derangement, advocation of or participating in un-American or subversive doctrines, persistent and wilful violation of the school laws of this Commonwealth on the part of the professional employe:".

It appears to us that a temporary professional employe may be dismissed either by an unsatisfactory rating referred to in §§1108 and 1123, supra, or by the board for reasons set forth in §1122. If a professional employe can be discharged under §1122 and a temporary professional employe cannot be discharged under that section, the teacher who has not acquired tenure by two years service has greater rights than one who has acquired that tenure status. This could not have been the intent of the legislature.

We believe that a temporary professional employe may be dismissed by an unsatisfactory rating under §§1108 and 1123 and by the board for reasons set forth in §1122.

The letter of dismissal did not state that the plaintiff was entitled to notice that she could ask for a hearing, but the court below properly held this to be immaterial as she asked for a hearing the day after receiving the notice, and a hearing was granted. She and her counsel appeared at the hearing but would not participate. Ultimately another hearing was held and her dismissal for cause sustained by the board. If the dismissal was found by the board to be proper and the board did not act illegally, she should not recover any salary for the time she was not rendering any service. *Kaplan v. Phila. School Dist.*, 178 Pa. Superior Ct. 88, 113 A. 2d 164 (1955) and 388 Pa. 213, 130 A. 2d 672 (1957).

The court below and the appellee lean heavily upon *Tishock v. Tohickon Valley Joint School Bd.*, 181 Pa. Superior Ct. 278, 124 A. 2d 148 (1956). That case held that where a school board and a temporary profession-

al employe entered into a contract which provided that it could be terminated by either party upon 80 days notice, the board could terminate the contract during the school year upon the above notice, even though the teacher did not receive an unsatisfactory rating. The provision in §1108 that no temporary professional employe should be *dismissed* unless rated unsatisfactory was held inapplicable because the contract was *terminated*. See *Horosko v. Mt. Pleasant Twp. School Dist.,* 135 Pa. Superior Ct. 102, 4 A. 2d 601 (1939). In the case now before us, there was a contract and the board did not terminate the contract but dismissed the temporary professional employe. It does not follow, however, that the board had no power to dismiss her. For the reasons set forth above, we think the board had the power to dismiss the plaintiff.

Judgment reversed and the record is remitted for further proceedings consistent with this opinion.