## Molino v. Portage Area School District

*Randall C. Rodkey*, for plaintiff.
*Ferdinand C. Bionaz*, for defendant.

O'KICKI, J., October 14, 1974.—Plaintiff, Molino, was employed by defendant school district, Portage, as a temporary professional employe for the 1972-73 school year as an instructor of remedial reading on

the elementary level. A copy of plaintiff's contract of employment is attached to plaintiff's complaint as Exhibit A.

On or about January 26, 1973, plaintiff was informed by letter from the superintendent of Portage Schools that her rating for the 1972-73 school year was unsatisfactory. In reply, Molino requested and received a hearing under the provisions of the Local Agency Law, of December 2, 1968, P. L. 1133, 53 PS 11 §11301, on February 26, 1973.

Approximately two days subsequent to this hearing, on or about February 28, 1973, Molino was informed by her attorney, Mr. Rodkey, that he had been informed that plaintiff was to be dismissed that evening. In response to this information, and hoping to avoid the implications of dismissal, plaintiff, through her counsel, began negotiations with Mr. Brence, the superintendent of Portage Area School District, for plaintiff's resignation. As a result of these negotiations, plaintiff agreed that she would submit a written resignation to Mr. Brence who would hold this resignation in confidence and without disclosing it, thus allowing Molino to finish her duties for the school term. In return for Molino's promise to resign at the end of the 1972-73 school year, Brence agreed that he would give Molino a good recommendation and a satisfactory rating for the year. During these negotiations and at all times subsequent thereto, Molino testified that she believed that she had a right to withdraw this resignation at any time before Brence submitted it to the Portage Board.

On February 28, 1973, a letter of resignation was drafted and sent by Molino's attorney to Mr. Brence, who replied by letter dated February 28, 1973, to the effect that, as a result of the discussions and negotia-

tions, Molino would receive a satisfactory rating at the end of the 1972-73 school year and a good recommendation.

Early in May of 1973, Molino learned that there were openings for a regular position in the school district and she consulted Mr. Kittell, the elementary principal, to inquire about these positions. Molino told Kittell that she had no intention of resigning. Thereafter, she told Brence that she withdrew her resignation. Further, on May 31, 1973, Molino, through her counsel, formally notified the Portage Board, by letter that she planned to continue her employment with Portage.

By letter dated June 18, 1973, Portage notified Molino that at the regular meeting of the Board of Education on June 13, 1973, Portage had accepted Molino's resignation. In reply to this action by the board, Molino, through her counsel, notified Portage by letter dated June 15, 1973, that this action was improper, since she had withdrawn her letter of resignation and, thus, the Portage Board's action of June 13, 1973, was construed as a dismissal of Molino.

Portage responded by a letter dated June 28, 1973, stating:

"At a special meeting of the Board of Education held on Wednesday, June 27, 1973, your letter dated June 15, 1973 was read to the board. The board accepted Miss Molino's letter of resignation since it was submitted by her through you and *given to our solicitor, Mr. Bionaz, in good faith, who in turn gave it to the superintendent of schools for board action.*

"*The fact that Miss Molino changed her mind as you indicated in your letter is something the board does not wish to consider. The board received Miss*

*Molino's letter of resignation on May 25, 1973 and accepted it at a meeting on June 13, 1973.*

"The board does not plan any further action concerning Miss Molino." (Emphasis supplied.)

Portage refused to grant a hearing to plaintiff on the issue of her dismissal by a letter to plaintiff's attorney dated July 12, 1973. Portage failed to make any findings or complete the original hearing of February 26, 1973. This action in mandamus was filed on August 1, 1973.

The first issue before the court is whether or not Molino had agreed to resign. Apparently, through the negotiations of her counsel and the school board's counsel an exchange of letters was to take place. Molino was to submit a letter of resignation, which is in the record. Brence notified the attorney for plaintiff by letter dated February 28, 1973, as follows:

"In view of the various discussions and negotiations which have taken place today, the following letter is submitted for your consideration.

"As I testified at the public hearing of Miss Janet Molino on Monday, February 26, 1973, it has been my desire to cooperate and assist Miss Molino in becoming an effective teacher. I will continue to cooperate and assist Miss Molino with any problems and help her in her efforts to be an effective teacher. She will receive a satisfactory rating at the end of the 1972-73 school year and a good recommendation."

In his testimony, Brence testified under cross-examination as follows:

"Q. Did Mr. Bionaz talk to you about whether or not Mr. Rodkey had talked to him about the possibility of Miss Molino withdrawing her resignation prior to May 30; did Mr. Bionaz talk to you about it?

"A. I think he mentioned there was a possibility.

"Q. Do you recall when that was mentioned to you?

"A. A few days; towards the end of May. I think he got the information from Mr. Rodkey that there was a possibility and he just passed it on to me in conversation. As I recall, I wondered if I should call Mr. Rodkey; that I heard from Mr. Rodkey and I didn't know if there would be a problem if I talked to him or the solicitor; that's one reason I wanted to check with the solicitor because I wanted to be sure that legally and technically my talking to Mr. Rodkey was proper.

"Q. Now, prior to February 28, at the time the Local Agency Hearing was held on February 26, were you informed by any board member or members, either formally or informally, at any time that Miss Molino was going to be discharged?

"A. No. Would you rephrase the question and I will answer another way. I think there was some concern about whether she should continue but no board member ever informed me she should be fired. Is that what you are asking?

"Q. Well, let me ask you this, were you, either on February 28 or prior to it, of 1973, informed that a meeting of the school board would be held, or may be held, or was being discussed to be held, regarding the dismissal of Janet Molino?

"A. No. No. I think the board was going to wait until they had an opportunity to read the information contained in the hearing. We didn't have that for several weeks; but I was not informed of that.

"Q. Mr. Brence, is it your testimony that on February 28 that you are not aware, or in fact did not inform Mr. Rodkey, or know about his being informed, of the fact that Janet Molino was going to be dismissed that evening?

"A. That's true.

"Q. Is that your testimony?

"A. That's correct."

Further, Brence testified in detail as to what his understanding of the agreement was they had with Molino.

Where the parties to an agreement have a different interpretation as to what the agreement constitutes, this court can only conclude that there was no meeting of the minds and no agreement. In fact, it is implicit in Brence's testimony that he would not be giving Molino a satisfactory rating if she had not earned it. His very words are that he "had to wait until the 30th of May so that (he) could in good conscience write that letter." If there was an agreement to resign on February 28, 1973, then the letters could have, and should have, been exchanged at that time. Not only does the court find that there was no agreement, the court further finds that such an agreement, if it did exist, would be in violation of and contrary to public policy. One of the reasons that professional employes of a school district are given a temporary contract is to enable a school board to pass objectively upon the qualifications of the teacher. To agree to give a satisfactory rating to a teacher who is not deserving of that rating is a subterfuge of the act and does harm to the school system as well as to the professional employe himself.

The next issue presented to this court is whether or not Molino resigned by letter or by her actions. From the recitation of the facts in this matter, was there a written letter of resignation or was there a course of conduct that indicated that Molino had resigned?

In a similar case, Furey v. Cheltenham Township School District, 29 D. & C. 2d 509 (1962), that Mont-

gomery County court decided. a mandamus action brought by a school teacher who had submitted his resignation and then sought to withdraw the same prior to the time that the board had taken formal action on that resignation. That court concluded that Furey had a valid contract pursuant to the Public School Code of March 10, 1949, P. L. 30, sec. 1121, 24 PS §11-1121. The contract of Furey provided that a professional employe may terminate his contract by written resignation presented 60 days before the effective date of that resignation.

So, too, herein the Molino case, the contract with Portage provides that the contract shall continue in force until the expiration of two years of satisfactory service rendered to Portage. It further provides that either Molino or Portage may terminate the contract by written notice presented to the other party 60 days before the effective date of such anticipated termination. It is fundamental contract law that an offer of any type, including an offer to resign, may be withdrawn by the offering party at any time prior to the acceptance of that offer. In this case, Molino had done all that was legally necessary to withdraw her offer of resignation by notifying both of Portage's agents, Kittell and Brence, both principals, that she had withdrawn her letter of resignation. In view of Molino's course of conduct and series of letters, we must conclude that Portage had nothing before it to accept on June 13, 1973. Portage had not notified Molino in writing that it was terminating Molino's contract. Portage had not made any findings pursuant to its hearing conducted under Local Agency Law on February 26, 1973.

In the Furey case, the letter of resignation had been directed to and received by that school board. Prior to the board action on Furey's notice, Furey

orally withdrew his offer of resignation. A fortiori, in this Molino case, the board's agent and superintendent, Brence, was orally notified of the withdrawal of the offer of resignation and the board's secretary had written notice of Molino's withdrawal of her resignation. Thus, Molino's offer of resignation had been withdrawn both orally and in writing at least 10 days before the Portage School Board decided to accept the same. Such action on June 13, 1973, by Portage was an absolute nullity.

Since we find that Molino did not resign, we must now determine whether or not a temporary professional employe, who has, in fact, been dismissed from her contract of employment, is entitled to a hearing under the provisions of the Local Agency law, 53 PS §11301.

In the case of Nicolella v. Trinity Area School Dist. School Board, 444 Pa. 544, 281 A. 2d 832, 835 (1971), the Pennsylvania Supreme Court specifically held that the employment and dismissal of such temporary professional employes are governed by section 1108 of the Public School Code of 1949. Act of March 10, 1949, P. L. 30, art. XI, sec. 1108, as amended, 24 PS sec. 11-1108, and not section 514 of the code, 24 PS §5-514, which applies only to permanent employes.

Section 1108 of the Public School Code provides that:

"No temporary professional employe shall be dismissed unless rated unsatisfactory, and notification, in writing, of such unsatisfactory rating shall have been furnished the employe within ten (10) days following the date of such rating. The rating of a temporary professional employe shall be done as provided in section one thousand one hundred twenty-three of this act."

However, in Johnson v. United School District Joint School Board, 201 Pa. Superior Ct. 375, 383, 191 A. 2d 897, 902 (1963), the court stated:

"It appears to us that a temporary professional employee may be dismissed either by an unsatisfactory rating referred to in §§1108 and 1123, supra. or by the board for reasons set forth in §1122. If a professional employe can be discharged under §1122 and a temporary professional employe cannot be discharged under that section, the teacher who has not acquired tenure by two years service has greater rights than one who has acquired that tenure status. This could not have been the intent of the legislature.

"We believe that a temporary professional employe may be dismissed by an unsatisfactory rating under §§1108 and 1123 and by the board for reasons set forth in §1122."

In the present action, there was no evidence adduced at the trial on January 11, 1974, that Molino had been dismissed for any of the reasons set forth in section 1122 (i.e., incompetence, intemperance, etc.). Moreover, while it is uncontested that Molino was given an unsatisfactory rating for her first term of teaching, Mr. Brence, the superintendent of defendant district testified at the hearing that plaintiff had performed in a satisfactory manner during her second term. At page 13, he testified that he had waited until the end of the term to make such a rating and stated explicitly on direct examination:

"As part of the agreement, in order to say I would have the letter of resignation, I had to write a letter saying she had completed the year satisfactorily. I had to wait until the 30th of May so I could in good conscience write that letter, so I wrote the letter . . ."

From this testimony, it is clear that Molino was not removed from her teaching duties due to an unsatis-

factory rating pursuant to section 1108 or under section 1122 of the code as required by law.

Our Cambria County court, in the recent opinion of President Judge A. A. McDonald, in the case of Acitelli v. Westmont Hilltop School District, September term 1972, no. 951, has followed the numerous precedents of the Commonwealth, Superior and Supreme Courts of Pennsylvania in holding that temporary professional employes can be dismissed or refused a permanent contract only if such employe has received an unsatisfactory rating. When such a temporary professional employe has received an unsatisfactory rating, such employe is entitled to a hearing under Local Agency Act.

Since Portage did not give Molino an unsatisfactory rating and since Portage did not properly or legally terminate Molino's contract, Molino and Portage are both bound by the contract of employment, which is part of plaintiff's complaint and is marked as Exhibit A.

Wherefore, in accordance with the foregoing opinion, we dismiss the exceptions filed to our order and verdict of July 5, 1974.