Board of Public Education, School District of Philadelphia, Appellant, *v.* Soler.

Argued November 30, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

reargument refused February 6, 1962.

*C. Brewster Rhoads,* with him *Sidney L. Wickenhaver,* and *Edward B. Soken,* for appellant.

*A. Harry Levitan,* for appellee.

*L. J. Lichtenstein* submitted a brief for American Civil Liberties Union, Greater Philadelphia Branch, under Rule 46.

OPINION BY MR. CHIEF JUSTICE BELL, December 29, 1961:

The facts in this case are not in dispute and may be thus summarized: On May 28, 1953, appellee-Soler, a teacher in Philadelphia Public Schools, was called to the office of Dr. Hoyer, Superintendent of Schools, and was informed that Dr. Hoyer had certain information in his possession which had an important bearing upon appellee's loyalty, and that Dr. Hoyer would like to ask appellee some questions with respect to this. Appellee then asked Dr. Hoyer to give him a list or statement of the proposed questions since he desired to consult his attorney before deciding whether to answer them. Dr. Hoyer thereupon gave him a sample question to take back to his attorney. That question was whether ap-

pellee had been an active Communist in January of 1952.

A second interview between Dr. Hoyer and appellee took place at Dr. Hoyer's office on June 19, 1953. At this interview appellee answered in the negative the sample question which had previously been submitted to him. Appellee further stated that before he would answer any similar questions he desired the opportunity to be supplied with the questions, so that he could again take them to his attorney for consultation. Dr. Hoyer refused to accede to his request, at which point *appellee refused to answer any further questions dealing with his alleged disloyalty.*

Because of this insubordinate conduct of appellee the Board of Public Education of the School District of Philadelphia, after a hearing at which appellee was present and represented by counsel, dismissed the appellee on the grounds of "incompetency." The Superintendent of Public Instruction of the Commonwealth of Pennsylvania affirmed the decision of the Board. Appellee appealed to the Court of Common Pleas No. 1 of Philadelphia County which reversed the decision and set aside the discharge (dismissal) of the teacher. The Board thereupon took this appeal.

The lower Court correctly posed the issues when it declared: "There are basically two legal issues involved in this case. The first is whether or not a school teacher can be discharged for incompetency on the ground that he refused to answer questions dealing with his loyalty, propounded to him by the Superintendent of Schools. The second issue, assuming that the first should be answered in the affirmative, is whether or not appellant [here appellee] can be properly held to have refused to answer questions relating to his loyalty propounded to him by the Superintendent of Schools." The lower Court then went on to answer both issues in the negative.

*Board of Public Education v. Beilan,* 386 Pa. 82, affirmed 357 U. S. 399, clearly and specifically held that refusal by a teacher to answer questions as to the teacher's loyalty propounded by his administrative superior is sufficient to render the teacher "incompetent" within the meaning of the tenure provisions of the Public School Code of 1949.[*] The Court said: "We turn to the conclusion of the court below that the charges against appellee did not come within the grounds for dismissal set forth in the School Code of 1949, supra. Under the Act of May 18, 1911, as amended by the Act of June 20, 1939, P. L. 482, the grounds for dismissal of a teacher were 'immorality, incompetency, intemperance, cruelty, persistent negligence, mental derangement, and persistent and wilful violation of the school laws of this Commonwealth'. . . . If the appellee had been charged with being a subversive it may be conceded that the Loyalty Act [often called the Pechan Act] should have been employed, but this was not the charge. *Appellee was charged with incompetency based on his refusal to respond to a pertinent inquiry as to his fitness to be a teacher.* The Loyalty Act preempted the field of dismissal for subversion as therein defined, but other causes of dismissal remained unaffected. Section 15 of the Loyalty Act expressly provides: 'The provisions of this act shall not affect the right to discharge any person for any cause other than those provided for by this act or without cause under existing law. . . .'. Moreover the Loyalty Act provides neither the procedure nor the substantive law with respect to the duty of a teacher to answer proper questions. The provisions of the School Code do provide the basis for

---

[*] 24 PS §11-1122 et seq.

The writer of the present opinion wrote a dissenting opinion in *Beilan* but his views were rejected by a majority of this Court. Having erected a signpost and approved a procedure for the Board to follow, this Court should be loath to now disapprove, disavow and destroy this signpost and procedure.

dismissal of a teacher who refuses to answer such questions.

"We have held that incompetency as a cause for dismissal is to be given a broad meaning. In Horosko v. Mount Pleasant Township School District et al., 335 Pa. 369, 6 A. 2d 866, Mr. Justice LINN, speaking for the Court, at pps. 374-375 said: 'The term "incompetency" has a "common and approved usage." The context does not limit the meaning of the word to lack of substantive knowledge of the subjects to be taught. Common and approved usage give a much wider meaning. For example, in 31 C.J., with reference to a number of supporting decisions, it is defined: "A relative term without technical meaning. It may be employed as meaning disqualification; inability; incapacity; lack of ability, legal qualifications, or fitness to discharge the required duty." In Black's Law Dictionary (3rd edition) page 945, and in Bouvier's Law Dictionary (3rd revision), p. 1528, it is defined as "Lack of ability or fitness to discharge the required duty." . . .'

"Certainly a teacher who refuses to respond to a pertinent inquiry relative to his fitness to teach is not competent within the broad reach of that term, whether the inquiry concerns loyalty or any other proper subject of inquiry. Frankness and cooperation with an administrative superior bear directly upon a teacher's competency. They are as essential in one occupying a post of public trust and civic responsibility as academic qualifications. Can it be seriously argued that where the superintendent of schools has trustworthy information indicating that a teacher has an incurable communicable disease or that he is a peddler of narcotics or, as here, that he may entertain Communistic ideologies which could be transmitted to the youth in his care, that no inquiry can be made as to the fact and that the teacher is not required to respond? As well stated in the brief of counsel for the appellant: '. . .

The Superintendent has the power and the duty, whenever the facts indicate the need, to inquire into and reevaluate the fitness of a teacher.' Unquestionably there is a reciprocal duty on the part of the teacher to fully and frankly cooperate. He may not block such proper inquiry by secretiveness or concealment.

"In Adler et al. v. Board of Education of the City of New York, 342 U. S. 485, the majority opinion of the U. S. Supreme Court by Mr. Justice MINTON, upholding the constitutionality of the Feinberg Law which prohibits employment of members of subversive organizations in the public schools of the State of New York, stated at p. 493: '. . . A teacher works in a sensitive area in a schoolroom. There he shapes the attitude of young minds towards the society in which they live. In this, the state has a vital concern. It must preserve the integrity of the schools. That the school authorities have the right and the duty to screen the officials, teachers, and employees as to their fitness to maintain the integrity of the schools as a part of ordered society, cannot be doubted.'

"In the instant case the court characterized appellee's conduct as 'misguided secretiveness and lack of candor', which it said it did not condone. The secretiveness consisted of a deliberate and insubordinate refusal to answer the questions of his administrative superior in a vitally important matter pertaining to his fitness. Such conduct stamped him with incompetence as a professional employe in the public schools.

"The court below states that the Superintendent's query related to a political association alleged to have occurred eight years prior to the interview and that appellee's refusal to answer 'that question' was obviously not relevant to the issue of his present competency. The court overlooks the fact that appellee not only refused to answer the question put to him, but any similar questions. . . .

" '. . . Past conduct may well relate to present fitness; past loyalty may have a reasonable relationship to present and future trust. Both are commonly inquired into in determining fitness for both high and low positions in private industry and are not less relevant in public employment.'

". . . much of the argument of counsel for appellee proceeds upon the unwarranted assumption that appellee was charged with subversion. . . . If appellee had been charged with subversion, his reliance upon the Fifth Amendment at the Congressional hearing would not have established his disloyalty. But the charge here was not disloyalty but incompetency, based on his refusal to respond to inquiry pertaining to his fitness.

". . . The Superintendent had the power, if not indeed the duty, to make the inquiry, and appellee had the duty to cooperate by answering freely and frankly. *His defiant conduct in refusing to respond justified his dismissal on the ground of incompetency.*"

The lower Court held that the later opinions of this Court in *Board of Public Education v. Intille*, 401 Pa. 1, 163 A. 2d 420, and *Board of Public Education v. Watson*, 401 Pa. 62, 163 A. 2d 60, overruled *Beilan*. This was error. *Beilan* involved questions propounded by the teacher's administrative superior, while in *Intille* and *Watson* the questions concerning the teacher's loyalty and his Communistic activities—which in each case the teacher refused to answer—were propounded by a Congressional investigating committee. That distinction between *Beilan* and the *Intille* and *Watson* cases clearly appeared throughout the Court's opinion. In the *Intille* case, the Court pertinently said:

"The three appellants (Angelina Intille, Thomas Deacon and Sadie T. Atkinson) were teachers in the public schools of Philadelphia until the Spring of 1954 when they were dismissed by the Board of Public Education of the School District on a charge of 'incompe-

tency', preferred by Dr. Louis P. Hoyer, Superintendent of the Philadelphia public schools. In each case, the dismissal was based *solely* on the teacher's refusal to answer certain questions *propounded by a Sub-committee\** (also known as the Velde Committee) of the Un-American Activities Committee of the House of Representatives concerning the witness' alleged membership in and association with the Communist Party . . . .

". . . The Superintendent based his finding of incompetency solely upon the fact that the appellants had refused to answer questions asked them by the Congressional Committee in reliance on their pleas of privilege under the Fifth Amendment against self-incrimination.

". . . At no time did any of the appellants refuse to answer any question asked them by their administrative superior. . . .

"The three co-ordinate courts below each sustained the order of dismissal before it in the mistaken belief that the question involved was ruled adversely to the appellant's contention by this court's decision in Board of Public Education School District of Philadelphia v. Beilan, 386 Pa. 82, 125 A. 2d 327, aff'd 357 U. S. 399. The error in that conclusion is patent. What the Board of Education sought to accomplish in these cases goes far beyond anything that was either decided or implied by the opinion for this court in Beilan's case. His adjudged incompetency resided exclusively in the fact that he had refused to answer questions of his administrative superior (Superintendent Hoyer) concerning matters deemed to have bearing on his qualifications as a teacher in the public schools of Philadelphia, and not that he had refused to answer questions of a Congressional Committee. *That such was the ratio decidendi in the Beilan case is not open to question. . . .*

---

\* Italics ours.

"The appellee Board is well aware of the distinction between Beilan and the present cases. In the Board's brief on these appeals, it is stated . . . that 'The present cases differ from the Beilan case in that the teacher's refusal to answer questions occurred before a Congressional Committee rather than before his administrative superior.' . . ."

Justice COHEN in his concurring opinion in the *Intille* case clearly set out the sole issue before the Court in that case: ". . . the only legal problem with which we are concerned and the only question briefed and orally argued on these appeals is whether a public school teacher is 'incompetent' if the sole evidence of his alleged incompetency *is that he availed himself of the privileges of the Federal Constitution in a Federal proceeding. This* has been answered most adequately by the opinion for the Court."* These cases, we repeat, hold that the refusal of a teacher to answer such *questions before a Congressional Committee* on the grounds of the First or Fifth Amendments to the Federal Constitution does not of itself render the teacher "incompetent". However, it is still the law of Pennsylvania that the refusal by a teacher to answer relevant questions concerning his loyalty *propounded by his administrative superior* is ground for a finding of incompetency under the tenure provisions of the Public School Code.

Appellee contends that since the questions dealt with his loyalty, the procedures provided for dismissal under the Pechan Act** are mandatory and exclusive.

_____

* Thus any language in the *Intille* and *Watson* cases which fails to distinguish between the situation where the questions are propounded by an administrative superior and those situations where the questions are propounded by a Congressional Committee was dicta. To avoid any further confusion we disavow such dicta and limit the opinion in those cases to the questions which were there involved.

** 65 PS §211 et seq.

We repeat, appellee was not dismissed on the ground of disloyalty; he was dismissed on the ground of incompetency because of insubordination and lack of frankness, candor and intellectual honesty. The fallacy of appellee's position is that he believes and contends that any question *pertaining to or within the area* of Communism or subversive activities or loyalty to our Country is barred unless brought and propounded under the Pechan Act. That gives to the word "incompetent" too narrow and restricted a meaning, and to the Pechan Act too broad a meaning, and is specifically refuted by the Court's opinion in *Board of Public Education v. Beilan,* supra.

Mr. Justice FRANKFURTER's concurring opinion in *Beilan v. Board of Public Education,* 357 U. S. 399, further refutes appellee's contention when it declares at page 410: "The services of two public employees have been terminated because of their refusals to answer questions relevant, or not obviously irrelevant, to an inquiry by their supervisors *into their dependability.* When these two employees were discharged, they were not labeled 'disloyal.' They were discharged because governmental authorities, like other employers, sought to satisfy themselves of the dependability of employees in relation to their duties. Accordingly, they made inquiries that, it is not contradicted, could in and of themselves be made. These inquiries were balked. The services of the employees were therefore terminated.

"Because the specific questions put to these employees were part of a general inquiry relating to what is compendiously called subversion and to conduct that on due proof may amount to disloyalty, every part of the process of inquiry is given the attribute of an inquiry into disloyalty and every resulting severance from service is deemed a finding of disloyalty. The argument runs, in essence, that because such an inquiry

may in certain instances lead to a determination of disloyalty, the refusal to answer any questions in this process and dismissal therefor themselves establish disloyalty. To make such an attribution to a State, to draw such an inference from a carefully limited exercise of state power, to disallow state action because there are those who may draw inferences that the State itself has not drawn and has avoided drawing, is a curbing of the States through the Fourteenth Amendment that makes of that Amendment an instrument of general censorship by this Court of state action."

Furthermore, appellee's argument is clearly unrealistic. Any teacher who refuses to answer the Superintendent concerning questions pertaining to whether he was a sex pervert, or a purveyor of narcotics, or had committed a robbery, arson, rape, or murder, could and should be dismissed as a teacher. But Communism is far worse. The above mentioned crimes clearly and obviously relate to a teacher's fitness and competency, yet the commission of any one of those crimes would injure only one or a very few persons. On the other hand, Communism makes a teacher far more unfit and incompetent than any of the above mentioned crimes because it would destroy and enslave not one or a few persons, but over one hundred and fifty million Americans. Communism by its teachings and even more strikingly by its acts and deeds is the mortal enemy of our Country. Communism is not merely a political belief like the peaceful advocacy of socialism, or democracy, or republicanism, or any share-the-wealth plan, or the abolition of Congress and the substitution of an oligarchy or of a dictatorship. Communism is a world wide revolutionary movement to overthrow by force, violence, subversion, sabotage, strikes, insurrections, revolution and, whenever necessary, war, the Government of every other nation and to establish an atheistic Communist dictatorship therein. Obviously, a

teacher who refuses to answer his Superintendent's questions pertaining to his present and past Communistic membership, activities or associations, is unfit and incompetent to be a teacher of our youth.

On the second issue involved, the court below held that even if the *Beilan* case is good law, Soler did answer the sample question and did not refuse to answer similar questions. What he did was, as above stated, to ask that before he was required to answer similar questions he be permitted the opportunity of consulting counsel. That request was refused, and *Soler then refused to answer further questions relating to his loyalty.*

Soler was not on trial for a criminal offense or a Pechan Act offense nor was he before a Congressional investigating committee. He was here being questioned by his administrative superior in private. He has no right to be represented by counsel or to demand a list of questions to be asked, *when questioned by his employer to determine his competency.* To contend that a teacher can insist that a professional interview with his superior *shall be conducted only on the teacher's terms* is unreasonable and ignores and *effectually negates* the relationship between teacher and superior. Soler's refusal to answer his administrative superior was unjustified and is ground for a finding of incompetency.

Judgment reversed and the decision of the Superintendent of Public Instruction is reinstated.

Mr. Justice BENJAMIN R. JONES concurs in the result.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

I dissent from the opinion of the majority because it is contrary to the law of this Commonwealth.

This matter is the third in a series of so-called "Communist-Teacher" cases which this court has been

called upon to decide in the last five years. In *Board of Public Education School District of Philadelphia v. Beilan,* 386 Pa. 82, 125 A. 2d 327 (1956), we held that the refusal of a school teacher to answer the questions of his administrative superior concerning alleged Communist activities establishes the teacher's professional incompetency within the meaning of the Public School Code of 1949, Act of March 10, 1949, P. L. 30, 24 PS §11-1122. This decision was affirmed by the United States Supreme Court at 357 U. S. 399, 409, 2 L. Ed. 2d 1414, 1433, 78 S. Ct. 1317, 1324 (1958), on the ground that the interpretation given by this court to "incompetency" was not inconsistent with the Due Process Clause of the Fourteenth Amendment. This case was effectively overruled, however, by our recent decisions in *Board of Public Education v. Intille,* 401 Pa. 1, 163 A. 2d 420 (1960), and *Board of Public Education v. Watson,* 401 Pa. 62, 163 A. 2d 60 (1960). In *Intille,* we said that the refusal of a public school teacher to answer questions in a hearing before a Congressional committee, in reliance upon the privilege against self-incrimination guaranteed by the Fifth Amendment did *not* constitute incompetency or evidence of incompetency within the meaning of the Public School Code, and such exercise of a constitutional privilege is *not* cause for dismissing a teacher. Similarly, in *Watson,* we held that the refusal to answer questions before a Congressional committee under the First Amendment of the federal Constitution did not constitute incompetency or evidence of incompetency within the Code, and that the dismissal of the school teacher was improper.

The *Intille* and *Watson* opinions were both written by former Chief Justice CHARLES ALVIN JONES who had previously dissented in *Beilan.* In *Intille,* the Court, per Chief Justice JONES, stated at 21-23: "For a public school teacher to plead a constitutional privilege, in appropriate circumstances, does not prove the teach-

er's incompetency within the intended scope of that term as used in our Public School Code. The plea is not even relevant as evidence of incompetency. Just as remaining mute, upon a plea of the Fifth Amendment, carries no implication of guilt of the matter inquired about in the unanswered questions (see Slochower v. Board of Higher Education of New York City, 350 U. S. 551, 100 L. Ed. 692, 76 S. Ct. 637 (1956)) so also does the plea not carry an implication of the pleader's *incompetency*. Nor is it of any materiality to a question of the pleader's competency whether or not the propriety of the plea against self-incrimination is conceded or rejected by the inquiring body so long as the plea is made in good faith and is not plainly frivolous.

"*. . . If the refusal to answer a particular question is to be made a basis for the discharge of a professional employee, the question should, obviously, have for its purpose the eliciting of information concerning some matter material to the fitness of the employee to continue at work. This is so whether the question propounded be by a Congressional Committee or by the Board of Education itself. And, if the only material matter to which the question relates is possible disloyalty or subversion on the part of the employee, then any proceeding looking to his dismissal for refusal to answer questions relating to his possible disloyal or subversive activities or affiliations must be brought under the Pennsylvania Loyalty Act of December 22, 1951, P. L. 1726, 65 P.S. §211 et seq.* [Pechan Act] . . . . What the Board of Education has attempted to do in these cases is to avoid the requirement of the Pennsylvania Loyalty Act that disloyalty or subversion, as a ground for the discharge of a public school teacher, must be proven 'by a fair preponderance of the evidence.' The Board's action evidences a belief that it has found a way to dismiss, without any evidence at

all, teachers whom it suspects of disloyalty or subversion. *Anything in the Beilan case to the contrary is herewith overruled for the future. In searching out and eliminating disloyalty or subversion among teachers in public schools the procedures of the applicable statute enacted for that purpose must be faithfully pursued, and violence must no longer be done the meaning of the word 'incompetency' in order to circumvent the procedures of the Loyalty Act."*

Similarly, in *Watson,* the former Chief Justice said at p. 70: "[A] teacher's refusal to answer questions touching her loyalty does not constitute 'incompetency' within the meaning of that term as used in the Public School Code of 1949 and that any proceeding looking to the dismissal of a teacher with tenure for alleged disloyalty must be brought and proceeded with under the provisions of the Pennsylvania Loyalty Act of December 22, 1951, P. L. 1726 (65 PS §211 et seq.)."

Consequently, less than two years ago, this Court specifically held that, *Beilan* notwithstanding, incompetency under the Public School Code does *not* include the refusal to answer questions concerning loyalty to either a legislative investigating committee or the administrative superior. If the Board of Education is concerned with the question of an employee's loyalty, let it invoke the proper administrative procedure provided by the Pechan Act, with its requirement that the appointing authority must establish by a fair preponderance of the evidence that the accused is subversive. Indeed, Section 13 of the Act of March 21, 1806, P. L. 558, 4 Sm. L. 326, 46 PS §156, provides that ". . . in all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of Assembly of this commonwealth, the directions of the said acts shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law, in such cases, further than

shall be necessary for carrying such act or acts into effect." This court has reiterated this provision on many occasions: see, e.g., *Jacobs v. Fetzer,* 381 Pa. 262, 265, 112 A. 2d 356 (1955); *Collegeville Borough v. Philadelphia Suburban Water Company,* 377 Pa. 636, 645, 105 A. 2d 722 (1954).

Here again, the Board of Education contends that the hearings were concerned only with incompetency, not disloyalty. The facts, however, convincingly refute this assertion. At trial, the superintendent of the public school system testified that the purpose of his interview with Soler was to ask him questions concerning certain information which had a bearing on appellee's loyalty. Indeed, the sample question given to Soler was whether he had been an active Communist in 1952. In this regard, Justice (now Chief Justice) BELL'S dissenting opinion in *Beilan* is relevant. He stated: "We cannot shut our eyes to the inescapable fact which we are convinced—notwithstanding the earnest, able argument of counsel for the Board—is glaringly disclosed by this Record, that Beilan was fired because the Board believed that he was a Communist." 386 Pa. at 110-111.

This court altered in *Intille* and *Watson* the interpretation of "incompetency" which it had previously given in *Beilan*. It is unfortunate that in less than two years we see fit to re-interpret it in a case where the facts are quite similar to those in the overruled *Beilan* case, and thereby cause confusion where clarity once reigned.

In our fight against Communism, we must not fall into the practice of resorting to the very methods of our enemies. Our decisions must be governed not by the temper of times but by a rigid adherence to our federal and state Constitutions and to statutory enactments. As this court stated in *Schlesinger Petition,* 367 Pa. 476, 483, 81 A. 2d 316 (1951), "It need hardly be stated that this Court is as opposed to communism

in all its manifestations as the respondent Judge who instituted these contempt proceedings. But it is our sacred duty to uphold the Constitutions and laws of our Country and State and their provisions as to due process of law. What the Judge has done, in his zeal against communism, is to adopt the detestable method employed by communists themselves in arbitrary and unjudicial proceedings contrary to all our cherished traditions of law and legal procedure."

When we shut our eyes to the inescapable fact that Soler was discharged for failure to answer questions at a *loyalty* proceeding and not at an incompetency hearing, we do violence to the very institutions we seek to protect.