Brownsville Area School District, Appellant, *v.*
Alberts.

Argued October 9, 1969.   Before BELL, C. J., JONES,
COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

430

*David E. Cohen,* with him *Richard D. Cicchetti,* for appellant.

*Ira B. Coldren, Jr.,* with him *Coldren & Adams,* for appellee.

OPINION BY MR. JUSTICE POMEROY, January 9, 1970:

The issue in this appeal is whether the Board of Directors of the Brownsville Area School District (District) had valid cause to dismiss one George Alberts (appellee) from his position as assistant supervising principal of the District.

The facts of the case are as follows: Prior to July 1, 1966, appellee Alberts had been serving as the supervising principal of the Brashear School District. When the Brashear District and two others were consolidated into the Brownsville Area School District, Mr. Alberts was appointed assistant supervising principal. In the spring of 1966, while the appellant District was being organized, the supervising principal-elect, John Caputo, requested the appellee to supervise a federally-financed Head Start Program, which was to be conducted in the District during the summer of 1966. The appellee thereupon assumed responsibility of this program, organized the curriculum, recruited the necessary professional and nonprofessional employees, coordinated the program with county officials,

and made all necessary arrangements to put it into effect.

The Head Start Program was administered by the Fayette County Community Action Agency, the local anti-poverty organization. All employees of the Head Start Program, including the appellee, were paid for their services. All salary payments were made directly to the employees by the Fayette County Community Action Agency from federal funds.

Throughout the summertime operation of the Head Start Program, Alberts performed the functions of the authorized position of "Head Teacher." As such he was paid from federal monies the sum of $1,071.11 for the period from June 27, 1966 to August 19, 1966. During the summer appellee also received his regular compensation for his services as assistant supervising principal of the District. His unrefuted testimony reveals that during this period, he spent some seven to nine hours a day on his duties for the District in addition to working roughly four hours a day for the Head Start Program.

On November 14, 1966, Caputo asked appellee if he had received compensation for his services in the Head Start Program, and appellee replied that he had. Following further discussion between them, Caputo informed appellee that he was forthwith suspended from his position as assistant supervising principal. Thereafter, on November 23, 1966, appellee was notified of a hearing before the Board of Directors of the District to consider charges of incompetence and negligence against him. Following the hearing, the Board dismissed the appellee on grounds of incompetence and negligence and on the added ground of immorality.

Appellee appealed his dismissal to the Superintendent of Instruction of the Commonwealth of Pennsylvania who found no merit in the charges and ordered his reinstatement without loss of pay. The District

thereupon appealed to the Fayette County Common Pleas Court and requested and was granted a hearing *de novo*. The court affirmed the order of the Superintendent, and this appeal followed.

The termination of a professional public school employee's contract is controlled by the Public School Code of 1949 which provides in relevant part as follows: "The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employee shall be immorality, incompetency, . . . [or] persistent negligence. . ." Act of March 10, 1949, P. L. 30, art. XI, §1122, as amended, 24 P.S. §11-1122.[1]

The charges of incompetence and persistent negligence upon which the District initiated its action rest on the complementary allegations that appellee had acted improperly in receiving compensation from the Head Start Program while he was on the District's payroll, and that he had been derelict in other respects, principally in failing to furnish Caputo with copies of the payrolls from the Head Start Program.

The first allegation, that of improper receipt of compensation, in the District's view is supported by two incidents. In the lower court, the Field Representative of the Office of Economic Opportunity testified that at a Head Start indoctrination meeting which appellee attended, she had stated that no individual could be compensated for his work in the program if he was being paid by another agency at the same time unless that agency authorized the double compensation. The representative could remember no other details of the meet-

---

[1] We have interpreted "incompetence" as it is used in this statute to include "insubordination and lack of frankness, candor, and intellectual honesty." *Board of Public Education, School District of Philadelphia v. Soler*, 406 Pa. 168, 177, 176 A. 2d 653 (1961). It is apparently this meaning of insubordination that the District had in view when it brought and pressed the charge of incompetence against the appellee.

ing, one of more than twenty presentations she gave during the time. Mr. Alberts, on the other hand, testified that he remembered no such statement. The lower court was thus presented with an issue of credibility which it apparently resolved in favor of appellee; we cannot conclude that it erred in so doing.

The second incident relied upon by the District was a discussion between Mr. Caputo and one of his staff members in the presence of appellee. The evidence reveals that Caputo informed the staff employee that he could receive no compensation for his work on a different federal project supplementary to that he received for his work with the District. The Superintendent of Instruction and the lower court apparently found that this discussion lent no support to the conclusion that appellee had been directed not to accept dual compensation; we concur and accordingly find that appellee's receipt of such compensation was neither incompetence in the sense of insubordination nor persistent negligence.

The District's second allegation—that appellee's failure to provide Caputo with a copy of the Head Start payroll despite several requests constituted persistent negligence—is equally without merit. Appellee testified that he had never been asked to provide a copy of the payroll; Caputo testified only that appellee had failed to provide the information in question, not that he had refused to do so. It is not clear from their opinions how either the Superintendent or the lower court resolved this issue of credibility; but even if that issue were to be resolved in the District's favor, we do not believe that the evidence is sufficient to support a finding of "persistent negligence" within the meaning of the statute.

Appellant relies upon *Johnson v. United School District Joint School Board*, 201 Pa. Superior Ct. 375, 191 A. 2d 897 (1963). In that case, the teacher had ex-

pressly refused to comply with a directive, issued on three separate occasions, to attend an evening Open House at the school. The court found that the teacher's announced and persistent refusal to accept such an assignment amounted to negligence, but that holding does not in our view warrant a finding of persistent negligence in the case now before us.

Finally, the District alleges that appellee was guilty of immorality. This Court has stated that "under the intent and meaning of the act, immorality is not essentially confined to a deviation from sex morality; it may be such a course of conduct as offends the morals of the community and is a bad example to the youth whose ideals a teacher is supposed to foster and elevate." *Horosko v. Mt. Pleasant Township School District,* 335 Pa. 369, 372, 6 A. 2d 866 (1939); *Flannery Appeal,* 406 Pa. 515, 520, 178 A. 2d 751 (1962). In the present case, there was no evidence of a State or federal ruling or regulation which would prohibit dual compensation of an employee of a school district, nor was there authoritative evidence that appellee was instructed not to accept compensation for his services to the Head Start Program. There was, however, unrefuted testimony that appellee was actively engaged in work for both the District and Head Start. We find no evidence that appellee received payment for services not rendered, or double payments for the same services. Certainly it cannot be seriously argued that receipt of legal compensation for services rendered is a course of conduct which offends the morals of the community.

We find in this case that the District has failed to establish that appellee was persistently negligent, incompetent, or immoral within the terms of the Public School Code.

Order affirmed.