Lucostic *v.* Brownsville Area School District.
Tassone *v.* Brownsville Area School District.

Argued November 2, 1972, before Judges KRAMER, ROGERS and BLATT, sitting as a panel of three.

*A. J. Kuzdenyi,* for appellant.

*Thomas A. Waggoner,* with him *David E. Cohen,* for appellees.

OPINION BY JUDGE ROGERS, December 1, 1972:

The Secretary of Education of the Commonwealth upheld the demotions in rank and salary of professional employes Frank Lucostic and Tony Tassone by the Board of School Directors of the Brownsville Area School District. The Court of Common Pleas of Fayette County ordered the reinstatement of Messrs. Lucostic and Tassone to positions and salaries commensurate with those they had formerly enjoyed.

Prior to June 18, 1970, Lucostic and Tassone were assistant supervising principals of the Brownsville school system. Mr. John Caputa was supervising principal and Mr. George Alberts was also an assistant supervising principal. Mr. Leonard Golembiewski was assistant high school principal.

Brownsville Area School District was created in 1966 by merger of three or more existing districts. In July 1969 its financial condition was such that, upon application of its Board of Directors, the Fayette County Court adjudicated it a distressed district and appointed a special Board of Control pursuant to Sections 691 and 692 of Article VI of the Public School Code of 1949, Act of March 10, 1949, P. L. 30, added December 16, 1959, P. L. 1842, §§2 and 3, 24 P.S. §§6-691 and 6-692. The Board of Control suggested to the Board of School Directors that the latter should, among other things, reorganize the administrative staff. After a series of meetings, the Board of School Directors determined that the three highest positions in the district should be those of superintendent and two assistant superintendents, rather than the former arrangement of supervising principal and three assistant supervising principals. Under the law, superintendents are elected for terms of four years whereas supervising principals are professional employees and enjoy the benefits of tenure, which, as we will later mention, have been closely pursued by the administrators of the Brownsville School District. The office of superintendent is one of greater power and responsibility than that of supervising principal, and requires higher qualifications, and may be held only by persons whose eligibility is certified by the Department of Public Instruction. Although Messrs. Lucostic and Tassone were veteran educators neither was certified to serve as a superintendent or assistant superintendent. After notice and

a hearing at which most of the evidence in this case was taken, the Board of School Directors did create the new positions of superintendent and assistant superintendents and, in convention, filled them with the only three persons on its existing staff qualified to hold those offices, George Alberts, who became superintendent, and John Caputa and Leonard Golembiewski, who were elected assistant superintendents. There were thus no places at the top for Messrs. Lucostic and Tassone. The Board created the post of vice-principal of the high school for Mr. Lucostic with a reduction of salary and demoted Mr. Tassone to teacher at a substantially decreased salary but at a high rate of compensation for a classroom teacher in the Brownsville system.

Section 1151 of Article XI of the Public School Code of 1949, 24 P.S. §11-1151, provides: "The salary of any district superintendent, assistant district superintendent or other professional employe in any school district may be increased at any time during the term for which such person is employed, whenever the board of school directors of the district deems it necessary or advisable to do so, but there shall be no demotion of any professional employe either in salary or in type of position, except as otherwise provided in this act, without the consent of the employe, or, if such consent is not received, then such demotion shall be subject to the right to a hearing before the board of school directors and an appeal in the same manner as hereinbefore provided in the case of the dismissal of a professional employe." The cases which have arisen under this provision establish the following principles: (1) A Board of School Directors may demote a professional employe in position or salary or both without his or her consent. (*Tassone v. Redstone Township School District*, 408 Pa. 290, 183 A. 2d 536 (1962)); (2) the action of the

Board in such case is presumptively valid (*Hibbs v. Arensberg*, 276 Pa. 24, 119 A. 727 (1923); and (3) the demoted employe contesting the Board's action has the burden of proving it to be arbitrary, discriminatory or founded upon improper considerations (*Smith v. Darby School District*, 388 Pa. 301, 130 A. 2d 661 (1957); *Lakeland Joint School District v. Gilvary*, 3 Pa. Commonwealth Ct. 415, 283 A. 2d 500 (1971)).

The Secretary of Education's opinions accompanying its orders dismissing the appeals of Messrs. Lucostic and Tassone contain findings, exhaustive and accurate accounts of the testimony, pertinent reference to the minutes of the Board and a thorough discussion of the issues. The opinion of the lower court accompanying its order reversing the Secretary of Education consists substantively of two short paragraphs, one stating that ". . . a department may not be abolished merely to circumvent the provisions of the Teachers' Tenure Act for arbitrary reasons by unlawful subterfuge," and the other stating its ". . . conclusion that the Appellant[s'] demotion in position and salary was made in an arbitrary and discriminatory manner, and that [they] must be reinstated." Upon what factual considerations this conclusion was based, the court has not informed us. Our careful reading of the record convinces us that far from demonstrating discrimination or arbitrary use of power, it discloses sound reasons for the reorganization of this administration as ordered by the Board.

The appellees urged the Secretary to reverse the Board and us to approve the court's reversal upon facts which would hardly justify assumptions, much less inferences.

At the municipal elections of 1969, some of the then members of the Board were defeated for reelection. One of the appellees had campaigned for the incum-

bents. He suggests that it follows from this alone that his demotion was reprisal for his political activities. This was denied by the Chairman of the Board's personnel committee, a professor at California State College. The Secretary of Education accepted the denial. The appellee in question had a perfect right to engage in the political campaigns of Board candidates. He had no right for this reason to later preferment either as reward for assisting successful candidates or as the beneficiary of an inference of discrimination by members he had unsuccessfully opposed.

The appellees further argue that the Board did not consult sufficiently with Mr. John Caputa, the supervising principal. The record shows that the Board did ask Mr. Caputa to prepare organization charts which in fact recommended a chief administrator and two assistants. The Board did not consult Mr. Caputa on the subject of who should fill those positions and it is clear that it did not do so because a majority of its members, some recently elected, held the opinion, with which we cannot find fault, that Mr. Caputa as chief administrator had to share some of the responsibility for the poor financial circumstances of the district. Mr. Caputa accepted without appeal one of the posts of assistant superintendent at a reduction in salary.

Finally, the appellees argue that the procedures of the Board in arriving at its decision to insist on superintendents were arbitrary. They point to caucuses of some but not all of the members of the Board and the failure to prepare job descriptions before deciding upon the persons to fill the newly created offices, contrary to the advice of the Chairman of the Board of Control, a business management advisor of the Pennsylvania Department of Education. The Board answers that the meetings in question were of the personnel committee and that, as conceded by the Chairman

of the Board of Control, school boards are not required to follow the advice of Chairmen of Boards of Control on how and by whom the district would be administered. In fact, the Board of Control by formal action declined either to approve or disapprove the reorganization on the ground that this was indeed the School Board's responsibility.

Because we do reverse the lower court we will advert to two of the reasons advanced by the Board in justification of its decision to create superintendencies which we believe were of particular weight. The Board was partially motivated by the passage during their deliberations of the Act of January 14, 1970, P. L. (1969) 468, §30, 24 P.S. §10-1071, requiring the election of district superintendents in all districts. Although the effective date of this legislation was postponed from July 1, 1970 until July 1, 1971 by the Act of May 4, 1970, P. L. 326, the Board reasonably persisted in electing superintendents in advance of the known future requirement.

Finally, it seems to us that conclusive support for this Board's action is found in the history of litigation concerning the administration of this comparatively small district.[1] This case is the fourth excursion of this Board and members of its administration into appellate court litigation. Indeed, the three earlier cases made much of the law on the subject of dismissal, demotion and suspension of professional employes. *See Alberts v. Garofalo,* 393 Pa. 212, 142 A. 2d 280 (1958) ; *Tassone v. Redstone Township School District, supra;*

---

[1] The pupil population was 4537 as of June 1970, down from 5028 in September 1966. The reorganization of districts mandated by the Act of August 8, 1963, P. L. 564, adding Subdivision I (eye) to the Public School Code of 1949, 24 P.S. §2-290 et seq., established a minimum pupil population of 4,000 for reorganized districts, with exceptions.

*Brownsville Area School District v. Alberts,* 436 Pa. 429, 260 A. 2d 765 (1970). Dr. Ralph F. Garofalo, president of the School Board since at least its reorganization after the election of November 1969 and, as is indicated by one of the cases cited earlier, a veteran of the administrative turbulence in this district, testified that the Board decided to create superintendencies so that at the end of the terms of persons selected ". . . if they did not do their work, they could go." This seems to us to have been an eminently sensible course in the circumstances. It necessarily eliminated the unqualified appellees who were ineligible for consideration.

We agree with the Secretary of Education that the record does not reveal this Board to have been discriminatory or arbitrary in carrying out the admittedly necessary administrative reorganization of this distressed district. Whether the lower court's review of the Secretary's action was of broad or narrow scope,[2] there was, we believe, nothing disclosed in the record which justified judicial interference with this School Board's actions approved by the State's principal educator.

Reversed.

---

[2] *See* discussion of the scope of review in *Brentwood Borough School District Appeal,* 439 Pa. 256, 267 A. 2d 848 (1970), majority and dissenting opinions.