IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The School District of Philadelphia,   :
                             Petitioner   :
                                                 :
                    v.                            :        No. 303 C.D. 2021
                                                   :        Argued: November 15, 2021
Adrian Arnold (Department of Education),   :
                             Respondent   :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE J. ANDREW CROMPTON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CROMPTON                  FILED: December 16, 2021

Before this Court is the Petition for Review of the February 17, 2021 Order (Order) of the Acting Secretary of Education (Secretary) reversing a decision of the School District of Philadelphia (District) dismissing Adrian Arnold (Arnold) from employment with the District as a teacher.

## I.     Background and Procedural History

Arnold was first hired by the District in 2010 to teach Chinese. He did not have a teaching certificate, but he was sponsored by the District for a temporary emergency permit. Arnold's employment was terminated in 2013 because he had not earned a teaching certificate. In 2015, the District sought to hire Arnold to teach Chinese at Mayfair Elementary School (Mayfair). However, his rehiring was not

approved at that time. Subsequently, Arnold was hired to teach Chinese at Mayfair for the 2017-2018 school year and taught kindergarten through sixth grade.

On October 11, 2017, a student alleged that Arnold had made inappropriate physical contact with him in class. Arnold contended that he redirected the student verbally several times, and after the student continued to be noncompliant, he grabbed the student's backpack to move him away from the other students. The student at issue claimed that Arnold scratched him in the process.[1] Mayfair administrators investigated the October 11, 2017 incident and held an investigatory conference with Arnold on November 14, 2017. A Philadelphia Federation of Teachers Union (Union) representative attended the conference with Arnold. After the conference, the Principal of Mayfair (Principal) issued an Unsatisfactory Incident Report (Report) on Form SEH-204. The Report contained the following recommendations:

> 1.) That [] Arnold immediately create an action plan to be utilized within the classroom to ensure a safe, orderly environment . . . .
> 2.) That [] Arnold continue to refrain from utilizing physical means to redirect students.
> 3.) That [] Arnold review the guidelines from Pennsylvania Act 126,[2] and fully understand the expectations for educations [sic] with implementation.
> 4.) That any further incidents of unsafe classroom conditions under [] Arnold's direction will lead to further disciplinary action, including suspension and termination.

---

[1] The Unsatisfactory Incident Report (Report) noted that the school nurse identified a one-and-a-half-inch scratch but that she had to unbutton the student's shirt to view it, and it was not clear how a scratch relative to the present incident would have occurred in that location as a result of the incident.

[2] Act of July 5, 2012, P.L. 1084 (Child Abuse Recognition and Reporting Training), which amended the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 - 27-2702 (School Code).

5.) That any further incidents of physical redirection of students will lead to further disciplinary action including suspension and termination.

6.) That this [Report] and all related documentation be forwarded for inclusion in [] Arnold's central office file.

Findings of Fact and Conclusions of Law of Hearing Officer Charles Forer (Hearing Officer), May 21, 2020, Reproduced Record (R.R.) at 505a-06a; R.R. at 153a-58a. Arnold was not suspended from his position following the aforementioned conference.[3]

On April 18, 2018, there was a follow-up conference regarding the October 11, 2017 incident. Arnold attended the April conference and a Union representative attended along with him. During the conference, Principal discussed with Arnold the recommendations he had made relative to the October 11, 2017 incident. At the April 18, 2018 conference, the Union representative indicated Arnold had completed an action plan to use within his classroom and that he would provide the plan to the school shortly thereafter. R.R. at 506a.

In the interim between the October 2017 incident and investigation and the April 2018 follow-up conference, a parent of one of Arnold's students alleged that Arnold physically assaulted her son on February 21, 2018. Principal began an investigation of the alleged February 21, 2018 incident the day after he received the parent's complaint and removed Arnold from the classroom, reassigning him to the

---

[3] Although Arnold had been reassigned to the reassignment room (also known as "teacher jail") for a period of time during the investigation of the incident, he continued to receive his full pay. R.R. at 375a-79a.

District's central office pending the outcome of the investigation and disciplinary proceeding regarding the second incident.[4] R.R. at 506a-07a.

The District sought to dismiss Arnold from employment, and the matter was heard before the Hearing Officer. The Hearing Officer determined that the District had valid grounds to terminate Arnold's employment. Specifically, he found:[5]

> 1. Under the School Code, valid grounds to terminate a professional employee include the following:
>
> > The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be immorality; incompetency; . . . [] intemperance; cruelty; persistent negligence in the performance of duties; wilful [sic] neglect of duties; . . . [] persistent and wilful [sic] violation of or failure to comply with school laws of this Commonwealth, including official directives and established policy of the board of directors . . . . 24 [P.S.] § 11-1122(a);[6] *see Vladimirsky v. [Sch.] Dist. of*

---

[4] During the investigation of the February 21, 2018 allegation, a student reported to an assistant principal that she was in possession of a cell phone video of the event that had occurred in the classroom. Principal obtained the video, which was approximately 25 seconds in length. R.R. at 507a.

[5] The Hearing Officer made these findings, under the heading **"C. There were Valid Grounds to Terminate Arnold's Contract,"** in his findings of fact and conclusions of law. R.R. at 523a-31a (emphasis in original).

[6] Section 1122(a) of the School Code, 24 P.S. § 11-1122(a), states, in pertinent part:

(a) The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be immorality; incompetency; unsatisfactory teaching performance based on two (2) consecutive ratings of the employ's teaching performance that are to include classroom observations, not less than four (4) months apart, in which the employee's teaching performance is rated as unsatisfactory; intemperance; cruelty; persistent negligence in the performance of duties; wilful neglect of duties; physical or mental disability as documented by competent medical evidence, which after reasonable accommodation of such disability as required by law substantially interferes with the employee's ability to perform the essential

**(Footnote continued on next page…)**

4

*Phila.*, 144 A.3d [986,] [] 993 [(Pa. Cmwlth. 2016)] ("The language of Section 1122 makes clear that a tenured professional employee may be dismissed *only* for the reasons set forth in that section.") (citation omitted) (emphasis in original).

2. The [District] has the burden of proving that a professional employee committed an act specified in Section [] 1122(a). *Foderaro v.* [*Sch.*] *Dist. of Phila.*, [] 531 A.2d 570, 572 ([Pa. Cmwlth.] 1987).

3. The [] District contends there was a valid cause for termination due to Arnold's "wilful neglect of duties" and his "persistent and wilful violation of or failure to comply with school laws of this Commonwealth, including official directives and established policy of the board of directors."

4. Failure to comply with an explicit order from a principal "amounts to 'willful and persistent violation of school laws,' a proper basis for dismissing a professional employe." *Blascovich v. Bd. of* [*Sch.*] [*Dirs.*] *of Shamokin Area* [*Sch.*] *Dist.*, [] 410 A.2d 407, 409 (Pa. Cmwlth. 1980) (citing *Spano v.* [*Sch.*] *Dist. of Brentwood*, [] 316 A.2d 162 (Pa. Cmwlth. 1974)) . . . .

7. As unambiguously reflected in the video and as Arnold conceded, Arnold used force during the incident . . . . Consequently, Arnold did not comply with [Principal's] express directive.

8. Arnold may well have seen other teachers on occasion physically redirect students . . . . However, there is no evidence in the record that these teachers were disregarding an unambiguous written directive, from their principal, that "any further incidents of physical redirection of students will lead to further disciplinary action including suspension and termination." []

9. Arnold may well not have intended to hurt the student and the student may well not have been hurt. [] No matter. By physically redirecting the student – and disregarding his [Principal's] specific directive, *see*

---

functions of his employment; advocation of or participating in un-American or subversive doctrines; conviction of a felony or acceptance of a guilty plea or nolo contendere therefor; persistent and wilful violation of or failure to comply with school laws of this Commonwealth, including official directives and established policy of the board of directors; on the part of the professional employe . . . .

*Blascovich* [] – Arnold risked harm and injury to the student and to others. [Principal's] express written directive sought to avoid this very risk.

10. Arnold asserts that Section XVIII(E)(10) of the Collective Bargaining Agreement between the [Union] and the District excuses his conduct. Section XVIII(E)(10) states as follows:

A teacher may use reasonable force to protect himself/herself or others from attack or injury, or to quell a disturbance which threatens physical injury to a teacher or others. Reasonable force shall mean the same degree of physical control over a pupil that a parent would be legally privileged to exercise but which in no event shall exceed the amount of physical control reasonably necessary to protect the physical safety of teachers or others.

11. Arnold did not establish that he needed to use force [a] to protect himself or his students "from attack or injury," . . . . To the contrary, Arnold admitted that the trigger for the incident was not a potential "attack or injury," but "[a] student was running around the room hitting peers in a playful manner." T. 171; *see also* T. 172[7] ("He was running around the room, horse playing with his peers, trying to touch them and get them running, you know, and tag him and stuff like that."). Accordingly, Section XVIII(E)(10) does not excuse Arnold's conduct.

12. Arnold further contends: "A teacher has the responsibility to control his students and sometimes it is necessary to redirect students physically to quell disturbances and maintain order. If a teacher stood there and let a student beat up another student or act in a way which could injure the student or his classmates it would [be] grounds for dismissal. [] But there is no evidence in the record that the student was beating up other students or was acting in a way that could injure himself/herself or others [] . . . ."

16. The [] District fully complied with the procedural requirements in the School Code for dismissal of a professional employee, including giving Arnold (a) a detailed written statement of the charges upon which his proposed dismissal was based; (b) timely written notice of the hearing, which the [] [D]istrict forward[ed] by registered mail; (c) an opportunity to be heard; and (d) a recording of all the testimony

---

[7] These are references to pages 171 and 172 of the transcript of the March 3, 2020 hearing before the Hearing Officer; R.R. at 414a-15a.

6

offered by a competent disinterested public stenographer whose services the district furnished at its expense. *See* 24 [P.S.] § 11-1127.

Hearing Officer's Findings of Fact and Conclusions of Law, May 21, 2020.

On July 1, 2020, the District's Board of Education (Board) held a Zoom meeting in which it voted 7-0 to terminate Arnold's employment. Arnold appealed the decision to the Pennsylvania Department of Education (Department), and a hearing was held before the Secretary's designated hearing officer (DHO) on September 15, 2020. On February 17, 2021, the Secretary issued an Opinion and Order adopting the DHO's findings and conclusions as follows.

In regard to the October 11, 2017 incident, the Secretary found:

5. On October 11, 2017, a fifth-grade student was playing with another student when the student was supposed to be in line along the wall to exit the classroom.

6. After he told the student several times to stop his behavior, and the student continually refused, [] Arnold [] approached the student and pulled him into the line by pulling on the student's backpack near the student's shoulder.

7. [] Arnold did not physically touch the student. [] Arnold's intent was to keep him from harming himself or other students.

8. The student complained to [Principal] that [] Arnold had inappropriate physical contact with him.

9. [] Arnold was reassigned to the District's teacher reassignment room.
10. The incident was reported to [the ChildLine and Abuse Registry (ChildLine)]. Child[L]ine did not take action against [] Arnold and did not file an indicated report of abuse.

11. Mayfair administrators investigated the October 11, 2017 incident.

12. Mayfair administrators held an investigatory conference with [] Arnold on November 14, 2017. . . .

14. [Principal] [determined] that the incident was inconclusive.

7

15. After the investigatory conference, [] Arnold was returned to his teaching duties . . . .

16. On December 19, 2017, [] Arnold's teaching performance was formally observed by an assistant principal who rated [] Arnold's classroom performance as distinguished in both classroom environment and professional responsibility.

17. On April 18, 2018, a second conference was held by [Principal] to present the [Report] pertaining to the [] incident of October 11, 2017, which contained several recommendations . . . .

19. The [Report] made the [] recommendations [addressed in the Hearing Officer's Findings of Fact and Conclusions of Law above, *i.e.*, Findings of Fact and Conclusions of Law of Hearing Officer Charles Forer, May 21, 2020, R.R. at 505a-06a; R.R. at 153a-58a].

20. In [the] follow[-]up conference on April 18, 2018, [Principal] informed [] Arnold that [he] was to refrain from utilizing physical means to redirect students. This recommendation came after the second incident of February 21, 2018.

21. [Principal] also stated that any further incidents of inappropriate physical redirection of students would lead to further disciplinary action up to and including suspension and termination.

22. There was no suspension or disciplinary action taken against [] Arnold by the administration or the previously identified (Board) pertaining to the first incident.

23. [] Arnold has observed other teachers physically redirect students.

24. The Collective Bargaining Agreement between the [Union] and the District states that a teacher may use reasonable force to quell a disturbance that may cause physical injury to the teacher or to others.

Secretary's Opinion and Order, 2/17/2021, at 2-4 (internal citations omitted).

The Secretary made the following findings relative to the February 21, 2018 incident:

27. On February 21, 2018, a student ran around [] Arnold's classroom touching other students and trying [to] get them to run, chase, and tag him.

28. [] Arnold told the student to stop running around the classroom, to return to his seat, and to be orderly.

29. The student refused to comply with [] Arnold's direction . . . .

30. The student ran around the classroom for a few minutes.

31. [] Arnold telephoned the main office and reported that he needed assistance with a student.

32. [] Arnold directed the student to leave the classroom and go to the assistant principal's office.

33. [] Arnold watched the student walk to the assistant principal's office.

34. [] Arnold was concerned about the safety of the other students.

35. Several minutes later, the student walked back into the classroom unescorted by anyone and started cursing at [] Arnold.

36. [] Arnold told the student to leave and go back to the assistant principal's office.

37. The student left the classroom and [] Arnold again observed the student enter the doorway leading to the assistant principal's office.

38. [] Arnold again telephoned the main office and reported that he needed assistance with a student.

39. Again, the student walked back into the classroom cursing profanities and sat down in his seat.

41. [] Arnold told the student that he could not be in the classroom. The student refused to get up out of his seat and go back to the assistant principal's office.[8]

_____

[8] We note that the Secretary's Opinion and Order does not include a finding 40. Instead, the numbering jumps from finding 39 to finding 41.

42. [] Arnold went to move the student toward the door by moving his seat.

43. The student got up and [] Arnold grabbed his loose-fitting shirt underneath his arm to pull him out of the room.

44. As he was pulling the student toward the door, the student grabbed a table and pulled away from [] Arnold causing a commotion.

45. An administrator arrived, and the administrator removed the student from the classroom.

46. [] Arnold wanted to remove the student because he was concerned that his coming back into the room could have caused more disorderly behavior by him or by the other students who he had previously antagonized.

47. [] Arnold was not trying to hurt the student, not trying to be cruel to the student, not acting out of anger, and not trying to be aggressive. [] Arnold did not hurt the student.

48. [] Arnold removed the student to prevent the student's disorderly behavior and acted reasonably considering the student's prior behavior.

49. On February 21, 2018, a parent of one of [] Arnold's students stated that [] Arnold had physically assaulted her child earlier that day.

50. [] [P]rincipal started an investigation of the February 21, 2018[] incident the day after he received the complaint.

51. On February 23, 2018, [] [P]rincipal assigned [] Arnold to the reassignment room in connection with the February 21, 2018[] incident pending the outcome of the investigation.

52. [] [P]rincipal reported the incident to Child[L]ine. Child[L]ine did not act against [] Arnold and did not file an indicated report of abuse.

53. During the investigation of the February 21, 2018[] incident, a student reported to an assistant principal that she had a 25[-]second video of what occurred in the classroom for [sic] on her cell phone.

54. A video was played during the hearing, and [P]rincipal identified [] Arnold and the student who was removed from the classroom in the video.

55. The student who made the [] video did not appear and did not testify that it was a true and accurate copy of the video . . . .

56. On April 18, 2018, an investigatory conference was held regarding the February 21, 2018[] incident.

57. At the April 18, 2018, investigatory conference, [] Arnold was represented by the [] [U]nion.

58. Following the investigatory conference, [] [P]rincipal made the recommendation to dismiss [] Arnold because he had pulled a student [] out of the classroom [by his shirt].

59. On May 31, 2018, a conference was held by [] [P]rincipal to discuss the report that [] [P]rincipal had written recommending . . . Arnold be discharged.

60. No new evidence was introduced during this conference.

61. On June 7, 2018, [] [P]rincipal again recommended that [] Arnold be discharged.

62. On September 11, 2018, a second[-]level conference was held by the regional assistant superintendent to discuss the incident.

63. [] Arnold was not permitted to bring an attorney to any of the investigatory conferences.

64. In the second[-]level conference report, the regional assistant superintendent recommended that [] Arnold be discharged.

65. On March 27, 2019, [] Arnold was suspended without pay by a District administrative employee.

66. The District administrative employee informed [] Arnold that he was not to return to the reassignment room[] and that he was going to be suspended without pay.

67. At that point in time[,] [] Arnold properly understood that he was suspended without pay.

68. [] Arnold was not told of the reason for his suspension without pay, but reasonably believed that it was because he had been placed in the reassignment room because of the incident of February 21, 2018.

69. [] Arnold's pay was terminated on March 27, 2019.

70. [] Arnold did not receive a statement of charges and a notice of right to a hearing at the time of this pay termination.

71. At the hearing before [an] unemployment compensation referee, the District's representative provided the referee with the exact date of [] Arnold's pay termination, which was March 27, 2019.

72. Based upon this admission, an unemployment compensation referee determined that the exact date of [Arnold's] pay termination was March 27, 2019.

73. The District did not dispute that [] Arnold's pay was suspended [] [or] the date of the pay suspension.

74. On March 28, 2019, the Board held a meeting.

75.The General Counsel announced that the Board had met in executive session prior to the start of the meeting to discuss personnel and employment matters in connection with the following proceedings.

76. None of the proceedings listed involved the circumstances that had led to [] Arnold's suspension without pay.
. . . .
78. On March 28, 2019, an Agenda Item No. 4 was placed on the Agenda of the Board meeting regarding the administration's recommended termination of professional employees.

79. [] Item No. 4 stated as follows:
Resolved that there exists sufficient evidence to support the recommendation of the Superintendent and/or his designee to terminate the employment, from the [District], of the following professional employees:
A.A.
[]

and be it

Further Resolved, that the Secretary and the Board of Education President are directed to advise these professional employees of this action item and their right to a hearing.

80. There is no evidence on the record that any Board member had ever seen any of the allegations against [] Arnold.

81. Following the vote, [] Item No. 4 was approved, and [] Arnold's employment was terminated on March 28, 2019.

82. On March 28, 2019, a letter containing a statement of charges and a notice of hearing (letter) was mailed to [] Arnold.

83. The letter did not indicate that the Board previously reviewed the charges in executive session.

84. The letter was signed by the president and the secretary of the Board.

85. In the letter, the secretary of the Board did not attest that as secretary [he/she was] authorized to make the attestation.

86. In the letter, the secretary of the Board did not attest that the Board had approved the statement of charges and the notice of hearing and that it was signed by the president of the Board in the secretary's presence.

87. There is no evidence on the record that any Board member, other than the president of the Board, had ever seen the letter before it was sent to [] Arnold.

88. []Arnold received the statement of charges on . . . April 5, 2019.

89. The Statement of Charges stated in part:

You are hereby notified that allegations have been made against you that constitute just cause for discipline pursuant to the [C]ollective [B]argaining [A]greement and, in addition, are sufficient grounds for termination of your employment as specified in Section 1122 of the [] School Code [].

13

> The Administration of the [] District . . . recommended that you be dismissed from employment effective March 28, 2019[,] based on these allegations and administrative findings made against you. The Board . . . resolved that there existed sufficient evidence to support the [] District Administration's recommendation of dismissal, and directed the Board [s]ecretary and [p]resident to issue this Statement of Charges and Notice of Right to Hearing letter.

90. The Statement of Charges alleged the following as just cause for termination of Arnold's employment:

> The allegations amount to immorality; incompetency; cruelty; persistent negligence in the performance of duties; and persistent and willful violation of or failure to comply with school laws of this Commonwealth, including official directives and established policy of the Board . . . .

91. On the same date, April 5, 2019, [] Arnold's counsel sent to the District [] Arnold's election of remedy letter, timely electing a hearing to be held by the Board pursuant to the teacher tenure provisions of the School Code . . . .

92. There was never any Board resolution to suspend [] Arnold without pay.

93. There is no evidence that any Board member other than the president ever knew that [] Arnold had been suspended without pay.

94. The only Board resolution was to terminate [] Arnold.

95. On March 3, 2020, a hearing was held by [the Hearing Officer].

96. There was never any resolution of the Board which appointed the [H]earing [O]fficer as the hearing officer for the Board.

97. No Board member ever attended the hearing or participated in any aspect of the hearing process.

98. No student was brought to the hearing to testify or any witness who had first-hand knowledge, testimony, or evidence of anything which happened in [] Arnold's classroom in either of the two incidents in question.

99. [Arnold's] alleged victims . . . were not brought to the hearing to testify.

100. Arnold testified in his own behalf.

101. [Principal] testified for the District.

102. The parties filed briefs and responsive briefs before the [H]earing [O]fficer.

103. On May 21, 2020, the [H]earing [O]fficer issued his Findings of Fact and Conclusions of Law to the parties independently of the Board.

104. The [H]earing [O]fficer held that substantial evidence supported the dismissal of [] Arnold from the District.

105. On July 1, 2020, the Board resolved to adopt the decision of the [H]earing [O]fficer.

106. There were no deliberations of the Board pertaining to [] Arnold's case in the recorded minutes of the meeting.

107. A roll call was conducted at the July 1, 2020[] meeting.

108. [A] resolution indicated that there was an independent review of the record by individual members of the Board.

109. A letter dated August 5, 2020, from the District[,] informed [] Arnold of the Board's resolution to adopt the decision issued by the [H]earing [O]fficer.

110. Arnold filed an appeal from the Board's decision to the Secretary . . . on July 25, 2020.
. . . .
112. Both parties filed briefs before the [DHO], [and] the [DHO] held a hearing on September 15, 2020, [at which] both parties appeared and argued . . . .

Secretary's Opinion and Order, 2/17/2021, at 4-12 (internal citations omitted).

In regard to credibility, the Secretary found:

Arnold credible in all respects regarding his description of the incidents that [led] to his dismissal and the procedure used to terminate his employment. To the extent that [] Arnold's testimony is contradicted by students' statements in documents that were not verified at the hearing by live testimony, I find the students' statements not credible. Because the students' statements are not credible, I conclude that the students' statements cannot support findings of fact as a matter of law. Additionally, I conclude that the video of the incident is unpersuasive. The student who made the video did not appear at the hearing and did not testify as to its authenticity. To the extent that [] Arnold's testimony that he called the main office twice is contradicted by the [P]rincipal, I conclude that [] Arnold is credible and that he did call the main office. I conclude that he did call the main office because eventually an administrator did report to [his] classroom.

Secretary's Opinion and Order, 2/17/2021, at 17.

The Secretary further determined:

**[] The District failed to establish sufficient grounds for dismissal pursuant to the Public School Code.**

[] Arnold was dismissed for immorality; incompetency; cruelty; persistent negligence in the performance of duties; and persistent and willful violation of or failure to comply with school laws of this Commonwealth, including official directives and established policy of the Board, by allegedly violating the District's policy against physically aggressive behavior by teachers towards students. I conclude that the District's argument is not supported by credible evidence. I conclude that [] Arnold did not persistently and deliberately act in a physically aggressive manner towards students and did not violate the District's policy. I find that [] Arnold did not persistently and willfully physically touch any students. I find that [] Arnold never intended to be physically aggressive towards any student. [] Arnold was not trying to hurt the student, not trying to be cruel to the student, not acting out of anger, and not trying to be aggressive. [] Arnold did not hurt the student. I conclude that [Arnold's] alleged misconduct was not persistent.

I have accepted [] Arnold's testimony to be credible. To the extent that [] Arnold's statements are contradicted by the video that was not confirmed by its maker as being a true and accurate copy, I have found the video to be not credible. To the extent that [] Arnold's statements are contradicted by witness statements in documents where

16

the witnesses did not appear and confirm those statements at the hearing, I have found those witness statements to be not credible. To the extent that [] [Arnold's] statements are contradicted by [P]rincipal, I find [] Arnold to be credible.

The first incident occurred when [] Arnold used a student's backpack to direct a student into the line. In using a student's backpack to direct the student into the line, [] Arnold did not persistently and willfully violate the District's policy against physically aggressive behavior by teachers toward students.

In the second incident, [] Arnold attempted to escort a student out of the classroom when the student was repeatedly refusing [] Arnold's directive to leave the room. In so doing, [] Arnold was behaving reasonably. When the student grabbed a table to prevent [] Arnold from escorting him out of the classroom, the student did not fall and was not hurt. [] Arnold was not attempting to harm the student or to be mean or cruel to the student. Once again, [] Arnold did not willfully violate the School Code or any policy of the District. [Arnold's] conduct was not cruel nor exhibited a loss of self-control or excessive use of force. Therefore, I conclude that [] Arnold did not commit an act which warrants dismissal under Section [1122] of the School Code. [*Sch.*] [*Dist.*] *of* [*Phila.*] *v. Sonarith Chek,* (Pa. Cmwlth., No. 1266 C.D. 2019, filed July 7, 2020)].

I find insufficient support in the record for the allegation that [] Arnold persistently and willfully violated and/or failed to comply with the school laws of the Commonwealth, including the official directives and established policy of the Board. I also conclude that [] Arnold was not intemperate and was not cruel. By the preponderance of the evidence, I conclude that the District has not met its burden of proof. I reverse the District's decision to terminate [] Arnold's employment as a tenured professional employee pursuant to Section 1122 of the Public School Code. I conclude that [] Arnold is entitled to reinstatement with backpay.

17

Secretary's Opinion and Order, 2/17/2021, at 17-19 (bold heading used in original). The District now petitions this Court for review of the Secretary's Opinion and Order.[9]

## II. Arguments

## A. District's Arguments

The District maintains that the Secretary committed errors of law by deeming certain evidence not credible and by finding that the District had not established sufficient grounds for Arnold's dismissal pursuant to the School Code.

The District argues that the Secretary's finding of fact that Arnold called the office to request assistance with a student, as required by District policy, is not supported by substantial evidence. The District maintains that, with no explanation at all, the Secretary deemed Arnold's testimony to be credible over that of Principal concerning whether Arnold had called the office for assistance even though Arnold only first alleged that he called the office at the Board hearing, which was the fourth investigative conference on the matter. The District asserts that "[e]ven if [Principal's] report that Arnold never called the office was deemed not credible for some reason, it is clear from Arnold's own testimony that his phone calls to the office did not seek assistance to remove the student from the classroom." District's Br. at 16. The District adds: "when the student returned to the classroom from the office a second time, Arnold admittedly physically redirected the student rather than calling the office as he had been instructed following the prior disciplinary incident a few months earlier." *Id*.

---

[9] "This Court's standard of review of a decision of the Secretary of Education is limited to [the] determination of whether substantial evidence supports necessary factual findings, and whether an error of law or constitutional violation was committed." *Curl v. Solanco Sch. Dist.*, 936 A.2d 183, 185 n.1 (Pa. Cmwlth. 2007).

In addition, the District asserts that the Secretary erred by finding that Arnold was told to refrain from utilizing physical means to redirect students *after* the February 2018 incident. The District maintains that the evidence shows Arnold received that warning in November 2017, as part of the investigation into the October incident, and that the warning was reiterated after a subsequent investigatory conference. The District adds

> that if the [] Secretary had correctly found that Arnold was warned after the first incident not to physically redirect students, he would have been compelled to find that Arnold persistently and willfully violated and/or failed to comply with the school laws of the Commonwealth by physically redirecting a student just three months after being warned that such actions would lead to termination. Accordingly, the [] Secretary's finding that Arnold was only warned not to physically redirect students after the second incident is not supported by substantial evidence and is a key factor in finding that an error of law was committed.

District's Br. at 18.

> Further, the District notes:

> Perhaps most surprising about the Opinion was that the [] Secretary held that cell[]phone video footage of the February 2018 [incident] was not credible because the student who took the video did not appear at the [] Board hearing to authenticate the video. The [] Secretary made this finding despite the fact that neither Arnold nor his attorney objected to admission of the video at the Board hearing, and neither stated that the video did not accurately the events depicted [sic]. Indeed, Arnold's counsel stated on the record, "I just want to put on the record I have no objection to the showing of the video." R.[R. at] 303a.

> By not objecting to admission of the video, Arnold waived the authentication objection. *See Folger ex rel. Folger v. Dugan*, 876 A.2d 1049, 1055 (Pa. Super. 2005); *Com. v. Fequiere* [(Pa. Super., No. 1591 EDA 2013, filed Feb. 28, 2014)] ("The very nature of an authentication objection is that it is made prior to the exhibit being admitted into evidence."); *E.B. v. H.S.* [(Pa. Super., No. 1906 M.D.A. 2012, filed Oct. 1, 2013)] ("Father's counsel did not object to the admissibility of the

videos on any basis at the time of the hearing. Therefore, Father's arguments are waived on appeal."). Furthermore, the video was authenticated at the School Board hearing by [Principal] and Arnold himself. [Principal] viewed the video and identified Arnold and the student that Arnold physically redirected. R.[R. at] 308a. Neither Arnold nor his counsel denied [Principal's] identification of either person. And Arnold confirmed that the video showed his physical confrontation with the student.

The video is important because it provides evidence that: 1) the student was seated and not posing a threat to anyone at the time that Arnold attempted to remove him from the classroom; 2) [] Arnold clearly used physical force in grabbing [] the student's sweatshirt and attempting to drag him out of the classroom; and 3) [] Arnold continued to try to drag the student out of the classroom even as Arnold's efforts caused mayhem among the rest of the class. Accordingly, it is clear that the [] Secretary's determination that the video was not credible was an error of law.

District's Br. at 18-20.

The District further argues that the Secretary provided no explanation as to why Principal's testimony should be deemed less credible than Arnold's testimony.[10] The District contends that the only example provided by the Secretary for finding Arnold's testimony credible was that Arnold testified to calling the main office to report he had sent the student to the assistant principal's office and that an administrator eventually came to his classroom. The District further contends that the Secretary made this determination "despite the fact that [Principal] testified that Arnold did not call the office, which [was] consistent with the reports from the investigatory conferences held after the incident." District's Br. at 21. The District suggests that "if Arnold had called the office, he could have called as a witness

---

[10] The District adds that the Secretary found the students' statements in the District's exhibits not to be credible but that this finding is immaterial because the District never offered the statements as evidence, and the Hearing Officer noted he would not consider them in his recommendation to the Board. District's Br. at 20, n.3 (citing R.R. at 355a-57a.).

someone that he spoke to during one of his purported calls. Yet no such witness was called." *Id.*

The District next addresses the Secretary's contention that there was "insufficient support in the record for the allegation that [] Arnold persistently and willfully violated and/or failed to comply with the school laws of the Commonwealth, including the official directives and established policy of the Board." District's Br. at 22 (citing Secretary's Opinion and Order, 2/17/2021 at 18-19). The District argues:

> Following the first incident of physical redirection in October 2017, Arnold was specifically directed in November 2017 by [Principal] that "any further incidents of physical redirection of students will lead to further disciplinary action including suspension and termination." [R.]R. [at] 157a, 279a-82a. [Principal] testified that he "wanted to make sure that it was very clear that we are not to put our hands on students to physically redirect." [R.]R. [at] 282a-83a.
>
> The issue of willfulness seems simple to analyze. Neither Arnold nor his [U]nion representatives stated at the investigatory conference in November 2017 that they did not understand the directive not to physically redirect students. [R.]R. [at] 157a. Furthermore, Arnold did not testify that his effort to remove the student from class in February 2018 occurred accidentally or unknowingly, such as while under the effects of drugs or medication. So the issue of whether or not termination is justified comes down to whether Arnold's violation of school laws – including [Principal's] directive not to use physical force against students – was "persistent." Pennsylvania courts have held that a teacher's violation of a directive from a superior regarding the use of physical force in disciplining students constitutes a violation of school laws justifying termination. In *Blascovich . . .* , 410 A.2d 407 . . . , this Court ruled that a teacher violated a directive not to use physical force by paddling seven students on one day 18 months after receiving a letter prohibiting him from administering corporal punishment of any kind. *Id.* at 409. Yet the Court did not address the issue of what constituted persistent violation, focusing instead on the fact that the teacher's action "directly contravened explicit orders petitioner had received by letter of June 3, 1976 . . . ." *Id.*; *see also Johnson v. United Sch. Dist. Joint Sch. Bd.*, 191 A.2d 897, 900 (Pa. Super. 1963) (holding that even a

21

single willful violation of a clear directive can be grounds for termination for persistent and willful violation of school laws) . . . .

[E]ven if Arnold's physical redirection of the student alone were not enough to constitute "persistent" violation of the school laws, that was not his only violation on February 21, 2018. As noted above, there is no substantial evidence to support the factual finding that Arnold ever called the office for assistance in handling the offending student. And he admittedly failed to follow that procedure when the student returned to class the second time. Furthermore, even if events occurred just as Arnold said they did, he still failed to follow District disciplinary procedures by allowing a student to leave class on his own to go to the office . . . . So Arnold violated at least three directives that day: 1) allowing a student facing discipline to walk the halls alone; 2) failing to call the office for assistance when necessary to remove a belligerent child from class; and 3) using physical force to redirect students. Arnold's violation of these three directives on February 21, 2018, was willful and persistent, justifying termination under the School Code.

District's Br. at 24-27. Accordingly, the District requests this Court "reverse the [] Secretary's Order and remand to the [] Secretary to determine Arnold's due process challenge, which was not decided in the Secretary's Opinion and Order." District's Br. at 28.

## B. Arnold's Arguments

Arnold argues that a school principal does not set school district policy. The Board does. Arnold contends:

[P]rincipal's assertion that a teacher may never touch a student is not the policy of the Board [], nor would such a policy be practicable. A teacher has an affirmative responsibility to prevent students from harming themselves or other students, to quell disturbances in his classroom, and to protect property. Teachers have always broken up fights, stopped students from playfighting, roughhousing, or acting out of order in a manner which is disruptive or potentially harmful to others, or just plain disorderly. It is impossible to do that without on occasion touching a student or ushering the student out of the classroom when the student refuses to comply with the direction of his teacher.

Arnold's Br. at 14.

22

Further, Arnold asserts that his dismissal was not in "strict compliance" with the mandatory procedural safeguards set forth by the Pennsylvania Legislature in the School Code. Arnold's Br. at 14-15. Arnold argues that such a failure is a "fatal defect" and a violation of "procedural due process," which requires reinstatement without loss of salary and compensation. Arnold's Br. at 15. Arnold states that his employment was terminated by the District's administrative officers effective March 27, 2019, and "[t]hat termination of his employment was effectuated under the "color of a suspension" designed to circumvent the mandatory procedural safeguards of the School Code. Such suspension without pay was effectuated by the office of Human Resources [] without any action of the Board [] and without any authority to do so." Arnold's Br. at 15. Arnold asserts that the District's intent was to terminate his employment effective as of the date of his suspension,

> thereby circumventing and effectively eviscerating the plain meaning and intent of the mandatory procedural safeguards which require a full pre-deprivation hearing held by the [Board] before any termination or demotion of status or pay. Instead, the District's Office of General Counsel independently held a belated hearing eleven months after Arnold's effective termination – that is *illegal*. *See Vladimirsky,* 144 A.3d at 1002-05 . . . .

Arnold's Br. at 15.

As to the substantive issues before this Court, Arnold argues that he was the only witness who had any first-hand, direct knowledge of what happened in the classroom on the day in question. He maintains that he was "attempting to quell a disturbance by an unruly and defiant student," which could have escalated into a situation "where children could have been hurt." Arnold's Br. at 16. He argues that he was acting "within the parameters of his duty to protect order in his classroom, protect his students, and protect the property of the District." *Id.* As to the October

2017 incident, Arnold states that he "redirected a student who was out of line and horseplaying by pulling on his backpack to move him into line and to get him to stop acting disorderly," which is something that is often done by teachers. Arnold's Br. at 16. Arnold adds that he acted reasonably during the second incident as well in response to the student's behavior. He notes that he only attempted to escort the student out of the classroom when the student was defiantly refusing to follow his direction to leave and that the student was repeatedly returning to the classroom after being sent to the assistant principal's office and was repeatedly cursing at him. Arnold further notes that the student did not fall down and was not hurt. *Id*. Arnold reiterates that he was not attempting to harm the student or to be mean or cruel to the student. He argues that he did not willfully violate any school law or policy of the District and that there is no District policy that a teacher may never physically redirect a student. He maintains that teachers prevent fights and break-up fights when they occur and that he did not commit an act which warrants dismissal under Section 1122 of the School Code. Arnold maintains that he did not physically abuse any student and at no time acted maliciously toward a student, and Principal, who testified against him, had no first-hand knowledge of either of the two the incidents.

Arnold contends that, in its statement of charges, the District did not cite any established policy of the Board which states that a teacher should never use physical means to redirect students. Arnold adds that is because the Board has no such policy. In addition, Arnold notes that a provision in the Collective Bargaining Agreement provides that teachers may use "reasonable force" in such situations and that "reasonable force" is defined as "the same degree of physical control of a pupil that a parent would be legally privileged to exercise . . . ." Arnold's Br. at 21 (citing R.R. at 72a; Collective Bargaining Agreement, Article XVIII (E)(10), at 73).

24

Arnold further contends that, in the everyday demands of teachers, a policy to never touch a student would be impractical. When students misbehave, fight, or otherwise act out in schools, and refuse to stop when directed by teachers, it is most often impossible to control the students without physically redirecting them. This is especially true for students with behavioral and emotional disabilities who often require physical directing. In this case, the student had begun to run around the room touching other students and creating disorder, which caused other students to react with negative behaviors. Arnold asserts that, if he had done nothing, he could have been accused of neglecting his responsibility to keep order in his classroom. Arnold adds that if he had been abusive to the child, the Department of Human Services (DHS) would have acted against him and filed an indicated report of child abuse on ChildLine and reported it to the District. DHS did not do so, and, in fact, determined that abuse was unfounded.

Arnold argues that the District bases its entire case on hearsay evidence to which he objected "every step of the way at the hearing." Arnold's Br. at 24. Arnold notes:

> The District did not bring in the student involved in the incident to the hearing to testify. Nor did it bring in the student who took the video to testify as to what had happened prior to the start of the video and what had happened after the video ended. Nor was there any substantiation by the student that the video was an accurate copy of the [] video. Therefore, the Secretary can determine the weight of that video.
> There is no substantive testimony against [] Arnold by any witness . . . with first[-]hand knowledge of what happened in [] Arnold's classroom. Moreover, the observation report reveals that [] Arnold is a good teacher with good class control. (R.[R. at] 159a) . . . .
> The [H]earing [O]fficer admitted the investigatory conference reports supposedly just for the fact that there were investigatory conferences, and not for the purpose of the hearsay which they contained and the student statements. (R.[R. at] 259a; []). Then [the

Hearing Officer] condemned [] Arnold on the uncorroborated hearsay. That is improper.

Nor can it be argued that [] Arnold received []progressive discipline.[]

Arnold's Br. at 24-25, 28.

Arnold further argues that it is indisputable that, at some point in time, he did call the office and that the timing of his call is not evidence of any intent to defy Principal or to defy any policy of the Board, as "[t]hings happen quickly in classrooms." Arnold's Br. at 30.

Arnold asserts that a second investigatory conference pertaining to the October 2017 incident was held by Principal after the February 2018 incident had already occurred. Arnold states:

> The conference summary report of the first incident was dated May 21, 2018, and the report stated that the conference had been held on "April 18th, 2018. (R.[R. at] 206a; Ex. SDP-8 containing the letter to Karen Gokay, Executive Director of the Office of Employee Relations, and a second SEH-204 Conference Summary issued on May 21, 2018). That was the date of the final summary of the investigation. By then, the second incident had already occurred on February 21, 2018 . . . .
> There never was a "second level" conference held by an assistant superintendent in the "first incident" to approve or disapprove the first SEH-204 conference summary. The investigation and decision-making process for the first incident had never been completed. There was a second level conference pursuant to the "second incident" only. (R.[R. at] 208a []).

Arnold's Br. at 30-31.

Additionally, Arnold states that, in his Opinion, the Secretary states: "The credibility of the witnesses and the weight to be accorded their testimony is within the exclusive province of the Secretary." Arnold's Br. at 31-32 (citing *Rhodes v. Laurel Highlands Sch. Dist.*, 544 A.2d 562 (Pa. Cmwlth. 1988)).

26

In regard to credibility, Arnold disputes the District's characterization of what the video shows and reiterates that the District's characterization of it is not supported by any witness who had first-hand knowledge of the situation. Arnold rejects the District's argument that the Secretary should have believed Principal over Arnold as to whether Arnold called the main office. He questions why the District did not present testimony from the administrator who ultimately came to his classroom during the second incident.

Arnold explains that the Secretary's review authority is *de novo* which requires that the Secretary issue an independent determination in accordance with *Belasco v. Board of Public Education of the School District of Pittsburgh*, 510 A.2d 337, 340-42 (Pa. 1986). Such review is plenary, and the Secretary sits as "the impartial tribunal" with the affirmative responsibility to review all of the evidence and issue a completely independent decision from that made by the District. *Id.* at 340-42.

Further, Arnold argues that the District's assertions that he violated at least three directives on the day of the second incident are not accurate. Specifically, he contends:

> (1) [he] did not allow the student to walk the halls alone. He testified that he sent the student to the assistant principal's office down the hallway and watched him enter the office alcove. Moreover, that directive was not given to him until after the second incident took place. (R.[R. at] 208a). (2) The Secretary made [a] Finding of Fact and a legal conclusion that [] Arnold called the office. And (3) the directive about using physical force was not given to [] Arnold until after the second incident. Moreover, such a directive is not the official policy of the District's Board . . . . It violates the Collective Bargaining Agreement and is not practical in the face of the realities of a teacher's responsibility to protect and maintain order in his classroom.

Arnold's Br. at 34.

27

Arnold adds that he never intended to harm any student or to be cruel and was at all times acting to maintain order in his classroom.

Arnold also contends he was denied due process. He asserts that the Board did not review the charges prior to them being sent to him and that the Board did not resolve to suspend his pay or terminate his employment status. He asserts that there is no evidence the Board knew of the charges at any time, and there is no evidence that any Board member had read the decision of the Hearing Officer when the Board voted to adopt the decision in his case. Arnold states: "There is no evidence that any Board member participated in the hearing or the decision-making process at any time. There were no deliberations of the Board on the matter." Arnold's Br. at 35 (referencing Secretary's Opinion and Order, 2/17/2021, Findings of Fact Nos. 63-110).

Arnold requests that this Court determine that the District did not sustain its charges against him and did not meet its burden of proof that it strictly complied with the procedural safeguards of the School Code. Accordingly, Arnold argues we should affirm the Secretary's Order and direct the District to reinstate him with back pay.

## III.    Discussion

We note at the outset that the Secretary has the authority to review the Board's termination decision *de novo* and that the Secretary is the ultimate fact finder with power to determine the credibility of witnesses, weight to be accorded evidence, and inferences to be drawn therefrom. *Forest Area Sch. Dist. v. Shoup*, 621 A.2d 1121 (Pa. Cmwlth. 1993); *Belasco*, 510 A.2d 337. The Secretary makes findings of fact based on the preponderance of the evidence. *Fisler v. State Sys. of Higher Educ.*, 78 A.3d 30 (Pa. Cmwlth. 2013).

28

The School Code does not define persistent and willful violation, but the Pennsylvania courts interpret the terms based on their common usage. "Persistent" generally means to be "continuing" or "constant" and is demonstrated where the violation occurs either as a series of incidents or one incident occurring over a substantial period of time. *Lucciola v. Sec'y of Educ.*, 360 A.2d 310, 312 (Pa. Cmwlth. 1976); *Horton v. Jefferson Cnty.-Dubois Area Vocational Tech. Sch.*, 630 A.2d 481 (Pa. Cmwlth. 1993). This Court has determined "there must be sufficient continuity and repetition of negligent acts to support a charge of persistent negligence." *Lauer v. Millville Area Sch. Dist.*, 657 A.2d 119, 121 (Pa. Cmwlth. 1995).

As this Court has previously stated, the purpose of Section 1122 of the School Code is to provide "the greatest protection possible against dismissal." *McFerren v. Farrell Area Sch. Dist.*, 993 A.2d 344, 353 (Pa. Cmwlth. 2010) (quoting *Lauer*). "To dismiss a professional employee protected by contract requires a serious reason, not 'picayune and unwarranted criticisms.'" *Id*. (quoting *Lauer*, 657 A.2d at 123). This is true, in substantial part, because a tenured professional employee has a property interest in continued employment. *Sch. Dist. of Phila. v. Jones*, 139 A.3d 358, 366 (Pa. Cmwlth. 2016).

Based on his assessment of the credibility of the witnesses and his assignment of weight to the evidence, the Secretary determined that Arnold did not act cruelly or out of anger and that he was not attempting to be aggressive. The Secretary further found that Arnold did not persistently and willfully touch any of his students and that he did not persistently and deliberately act in a physically aggressive manner toward students or violate District policy. We agree. In both instances in which Arnold redirected his students, he utilized the respective student's

29

clothing, or an accessory item, rather than making physical contact with the student's body. Arnold's conscious decision to grab a student's backpack and the sleeve of a loose-fitting shirt support his contention that he was not acting in a cruel or aggressive manner. As to the first incident, a scratch found on the student's body was not found by Principal to be likely attributable to Arnold, given the scratch's location. In the second incident, the student did not fall and was not injured in any way. Although the two incidents occurred within months of each other, the District's Board did not suspend Arnold or take any disciplinary action against him for the first incident, and while both incidents were reported to ChildLine, no action was taken against Arnold, and there was no indicated report of abuse.

Relying on *Blascovich*, 410 A.2d 407, *Johnson*, 191 A.2d 897, and *Board of Public Education School District of Philadelphia v. August*, 177 A.2d 809 (Pa. 1962), the District contends that even a single violation of a clear directive can be grounds for termination and that a teacher's violation of a directive from a superior regarding the use of physical force to discipline a student constitutes a violation of school laws justifying termination.

*Blascovich* involved a teacher whose termination arose from complaints received by the school principal that the teacher had assaulted several seventh-grade students in the gym locker room and had paddled seven students. The entirety of the incident included testimony from a seventh-grade student that, in the locker room after gym class, the teacher had grabbed him by the collar, punched him in the chest four or five times, pushed him against the wall, and twice punched him in the eye. The student further testified that as a result of a final blow, he fell to the floor striking his head and knee. In *Johnson*, the teacher was dismissed for insubordination and lack of cooperation for her deliberate refusal to participate in

30

the school's open house program, as she was told she would be required to do when she interviewed for her position. In addition to being informed of same at the time of her interview, she was subsequently reminded of her obligation at a meeting of teachers the day before the beginning of the school term, as well as at least one other date prior to the event. Before the scheduled open house, the teacher advised her administrative superior that she would not be attending and was informed again that she was required to attend. Without providing a reason, the teacher stated she would not be attending, and, in fact, she did not attend the open house. In *August*, a teacher's dismissal for insubordination was upheld by our Supreme Court where the teacher refused to cooperate with the school district's superintendent in an inquiry relative to the teacher's loyalty to the United States of America. While each case is instructive on the ability of a school district to terminate a teacher for failure to follow a clear directive from a superior, each is distinguishable from the matter *sub judice*.

In the present matter, Arnold was not engaged in the kind of brutal, physical engagement with his students that was at issue in *Blascovich*, and, here, Arnold was not blatantly insubordinate like the teachers in *Johnson* and *August*. Although Arnold appears to have been put on notice of Principal's recommendations at the November 2017 investigatory conference, we cannot say that the Secretary erred when he determined that the recommendation came after the second incident of February 21, 2018. Secretary's Opinion and Order, 2/17/2021, Finding of Fact No. 20, at 3. The ambiguity as to when the recommendation became final as an actual directive, coupled with the language of Article XVIII(E)(10) of the Collective

Bargaining Agreement which allows a teacher to use reasonable force[11] "to protect himself/herself or others from attack or injury, or to quell a disturbance which threatens physical injury to a teacher or others," separates the instant case from the situations in *Johnson* and *August*. Article XVIII(E)(10) of the Collective Bargaining Agreement; R.R. at 72a. In this regard, it provides further support for Arnold's position that the District does not preclude the use of physical means of redirecting students, as there were, at a minimum, competing directives on the matter. In light of the competing demands facing Arnold in the heat of the moment, along with his relatively measured response, we cannot say that the Secretary erred by finding the District failed to meet its burden of proving Arnold had engaged in a persistent and willful violation of District rules.

As to the District's contention that the Secretary erred by finding the video of the second incident not credible, we disagree. Although Arnold did not object to the admission of the video into evidence without authentication by the student who had recorded it, the Secretary found that, in this case, such lack of authentication weighed against its credibility. The Secretary is free to make such determinations as part of his weighing of the probative value of the evidence. We see no error in the Secretary's determination, especially when coupled with the potentially limited value of a video that accounts for only a 25-second snapshot within the larger context of events that comprised the incident in its entirety.

It is clear that the Secretary reviewed the evidence before him, including the arguments made by the parties before the DHO, and made a

---

[11] We reiterate that "reasonable force" is defined in the Collective Bargaining Agreement to mean "the same degree of physical control over a pupil that a parent would be legally privileged to exercise but which in no event shall exceed the amount of physical control reasonably necessary to protect the physical safety of a teacher or others." Article XVIII(E)(10) of the Collective Bargaining Agreement; R.R. at 72a.

determination based on the totality of the information presented to him. In the end, the critical determination for the Secretary was whether Arnold's actions constituted the kind of willful and persistent violation of the school laws of the Commonwealth, including the official directives and established policies of the Board, to support his dismissal from the District. The fact is that the only witness presented by the parties, who had direct knowledge of what transpired in the October 2017 and February 2018 incidents was Arnold, and the Secretary found him credible as to his actions and his motives. This determination, along with the assignment of weight to the remainder of the evidence of record, was within the Secretary's discretion, and it is irrelevant whether the record contains evidence to support findings other than those made by the factfinder; the critical inquiry is whether there is evidence to support the findings made. *Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095 (Pa. Cmwlth. 2007). Here, there is. Thus, we affirm the Order of the Secretary reinstating Arnold to his position as teacher with the District with backpay.[12]

## IV. Conclusion

Because the Secretary's determination is based on substantial evidence which supports the necessary factual findings, and we detect no error of law or constitutional violation, we affirm the Secretary's February 17, 2021 Order.

_____
J. ANDREW CROMPTON, Judge

---

[12] Because we affirm the Order of the Secretary, and the Secretary did not address the due process issues raised by Arnold, herein, as they were rendered moot by the Secretary's determination, we do not address Arnold's due process contentions here either.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The School District of Philadelphia,  :
                        Petitioner  :
                                    :
            v.                      :         No.  303 C.D. 2021
                                    :
Adrian Arnold (Department of Education),  :
                        Respondent  :

# **O R D E R**

**AND NOW**, this 16th day of December 2021, the February 17, 2021 Order of the Department of Education is **AFFIRMED**.

_____

J. ANDREW CROMPTON, Judge